## Long et al. v. Reiss et al.

March 27, 1942.

Stites & Stites and Norris McPherson for appellants.

Richard P. Dietzman and J. Wheeler Campbell for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY—Affirming.

This is an action for the specific performance of a written contract to convey a coal mining property. The appellant asserted that he was such a beneficiary under the terms of the contract as authorized his enforcement of it against the appellees. The lower court having refused to grant the specific relief sought, this appeal is prosecuted from its final order dismissing his co-oppellant, Ohio River Coal Co., as a party plaintiff in the action, after having sustained the many demurrers of the defendants and appellees, Dr. Reiss and the Highland Creek Coal Co., to his petition and same as repeatedly amended by plaintiffs and appellants, Dennis H. Long and the Ohio River Coal Co., and also after its sustaining in part a demurrer to the intervening petition of Adolph Reutlinger and further directing that appellees join issue on the allegations of the petition and intervening petition setting up their claims against Dr. Reiss as a constructive trustee of the mining property which

he had refused to convey, according to contract, to the plaintiff corporation.

The storm center or focal point of this litigation is the written contract made by and between Dr. Fred Reiss, the appellee, and the appellant, Dennis H. Long, to which we shall hereinafter refer and discuss, but before doing so we deem it appropriate to give first the background out of which this litigation arises, as tending to aid in our determination of the issue presented, and then the course of the pleadings and orders of the lower court involved on this appeal, as, there having been no proof heard, the case turns or goes off on the pleadings and the written contract filed therewith as an exhibit, the lower court having dismissed the petition based thereon, as same was many times amended, and entered thereon the final order, of which appellants complain and from which this appeal is prosecuted, dismissing the appellant, Ohio River Coal Co., as a party in the action and directing that defendants and appellees join issue on the allegations of the petition and intervening petition setting up a constructive trust.

The background of this litigation, as its facts are reflected by the pleadings (the allegations of which, for the purposes of the demurrers thereto, are to be taken as true), appears to be that for some years prior to January, 1919, the appellee, Dr. Fred Reiss, was the owner of a 4,000-acre tract of coal land, described in the pleading, in Union county, Kentucky, which he then sold to the Union County Mining Co., a corporation organized by him, and had it, as purchaser of the coal land, put upon it a mortgage to secure a bond issue of $160,000. Of this issue, $80,000 of the bonds were turned over to Dr. Reiss in payment for the coal land he sold the company, while the remaining half of $80,000 of the issue was sold to the public for the purpose of raising necessary funds for working capital and machinery required for the mining operation.

It further appears that this Union County Mining Co. soon encountered many financial difficulties and reverses in the operation of its mining business, rendering needful, as a financing operation, a reorganization of the company, which was carried out by organizing, in 1923, the Interstate Coal Co. as its successor, to which it conveyed all its assets upon the latter's assuming its liabilities.

Through this financing operation fresh working capital, it appears, came into the hands of the Interstate Coal Co., but the old mortgage secured bonds, totalling $160,000, issued by the purchaser of the coal land, the Union County Mining Co., remained unpaid and in effect against it.

It is further shown by the record that the Interstate Coal Co. did in turn, due also to like adverse economic and marketing conditions, encounter repeated financial difficulties in operating this coal mining property conveyed it, but nevertheless and despite these financial difficulties experienced, managed to continue carrying on the mining operation until 1934, when, its officers and bondholders recognizing that the company had become insolvent, the written contract, which as stated supra is the storm center of this litigation, was made and entered into by and between the appellee, Dr. Reiss, a then director of the company, and the appellant, Dennis H. Long, its then president, for the purpose of working out a further reorganizing plan by which some of the assets of the company and the bondholders' investments therein might be salvaged.

This contract, stripped to its essentials, does by its prefatory paragraphs first expressly recognize and point out that the Interstate Coal Co. had become insolvent and was unable to continue the operation of its mine; second, that by reason of Dr. Reiss and the other bondholders having purchased their bonds originally on account of the interest of Long in such coal property, they felt he should lend his best efforts toward salvaging their unprofitable bond investment; and, third that "for and in consideration of the premises and in the further consideration of good and valuable consideration, the receipt of which is acknowledged," the parties, Reiss and Long agreed that: (1) Dr. Reiss, the owner of half of the bonds, should cause the institution of proceedings to foreclose the mortgage securing the bonds, "using for that purpose the first mortgage bonds owned by him together with any bonds owned by those who may cooperate," and would undertake to purchase such property at such foreclosure sale *"for the benefit of himself and other holders of said bonds who may cooperate with him, if such* purchase can be made for a satisfactory price." (Italics ours.) The contract further provided that (2) at the resulting sale, failing an adequate outside bid, Dr.

Reiss (first party) would not only purchase the property, but would, upon his doing so, thereafter convey same to a designated corporation controlled by Long (second party), such conveyance to be subject only to a lien for a total bond issue of $80,000, to be evidenced by bonds of various denominations, etc. and which bonds would be apportioned between the existing bondholders in the ratio of 50% of their holdings; (3) the lien securing such new bonds, issued in exchange, might be subordinated "on their face" to a lien given to secure an authorized loan not to exceed the principal sum of $20,000, to be obtained from the Federal Government or other source; and the fourth paragraph provides for a sinking fund for the bonds; the fifth provides that should someone else bid in the property at the foreclosure sale, the contract should be null and void, while the last and sixth paragraph provides that if Dr. Reiss and other assisting bondholders should purchase the said property at the foreclosure sale, then, it was agreed, the party of the second part, Long, would organize a Long-controlled corporation to accept title to said property, subject only to the $80,000 bond lien set out supra, which was to be subordinated to the lien given to secure the authorized $20,000 loan.

Pursuant to the terms of this contract made between Reiss and Long in November, 1934, Dr. Reiss engineered a foreclosure sale of the property early in 1935, at which he became its purchaser or bought it in, to quote the contract, "for the benefit of himself and other holders of said bonds who may cooperate with him." However, having carried out the contract to this extent, he thereupon declined to carry out its further provision by which he promised that should he become the purchaser of the property upon its foreclosure sale, he would convey it to the designated corporation to be organized and controlled by Long, the party of the second part, subject to the terms of their contract.

It further appears that Long, before confirmation of the sale to Reiss, protested against Reiss' failure and refusal to carry out this part of his agreement requiring him to convey the property to a corporation to be organized and controlled by Long "for the benefit of Reiss and the other bondholders cooperating with him" and asserted his ability and willingness to then organize such corporation to take over and operate the purchased min-

ing property upon Reiss' conveyance of it to him, as by their contract provided.

However, it is alleged, and admitted, that Reiss persisted in his refusal to so carry out the contract and, in outright violation and repudiation of it, that he organized another corporation, the Highland Creek Coal Co., which was, except for qualifying shares, entirely owned by him, and to which he conveyed this Interstate Coal Co. property purchased by him at its foreclosure sale. By reason of such alleged breach of his agreement, suit was thereupon brought by the Interstate Coal Co. in the Western U. S. District Court of Kentucky against the defendants, Reiss and his creature corporation, the said Highland Creek Coal Co., seeking specific performance of this same contract had between Reiss and Long in November, 1934, the construction of which, as stated supra, is the focal point of this litigation.

A motion to dismiss the complaint was there sustained with leave to amend, when, after further amending the bill of complaint three or four times, with the motion to dismiss the complaint as amended from time to time being in each instance sustained, the said bill of complaint was finally, on September 4, 1935, dismissed without prejudice. Thereupon, on September 6, 1935, the appellant, Dennis H. Long, filed his petition in the Jefferson circuit court against the present appellees, Reiss and the Highland Creek Coal Co., again basing his action on the same aforementioned contract.

Demurrer was sustained to his petition, whereupon Long, as yet the sole plaintiff in this action, filed his first amended petition, again alleging his willingness and ability to organize a corporation in accordance with the provisions of said contract and again concluded with prayer for its specific performance.

Both defendants filed a general demurrer to the petition as amended, which was ordered sustained, the order further directing that plaintiff's petition be dismissed without prejudice, with leave to amend and "join as party plaintiff any corporation actually in existence and organized" to take over under the rights that may accrue to it by virtue of the contract of November 22, 1934, between Reiss and Long.

On February 13, 1936, following, Mr. Long, in compliance with this order of the court, filed an amended and

substituted petition in equity, joining as plaintiff with him in the action the appellant, Ohio River Coal Co., designated as a Long-controlled corporation which he had organized, pendente lite, on February 3, 1936, to take over the property.

Again was a demurrer sustained to the petition as so amended, the court further directing that plaintiffs be given leave to file one more amendment, when plaintiffs, Long and his newly organized corporation, the Ohio River Coal Co., on November 21, 1936, filed their second amended and substituted petition in equity and at the same time Adolph Reutlinger, one of the outside bondholders of the old Interstate Coal Co., filed an intervening petition, suing for himself and as a class representative, on behalf of all other bondholders similarly situated.

Again defendants interposed demurrers to the petition as last amended and also to Reutlinger's intervening petition. Upon due consideration, the court overruled demurrer to the first paragraph of the intervening petition but sustained it as to its second. Further it sustained demurrer to the last amended petition of Long and the Ohio River Coal Co. and by its order here complained of also directed that the Ohio River Coal Co. be dismissed as a party in the action and that the defendants (here appellees) join issue on the allegations of both the petition and intervening petition setting up a constructive trust and such other defenses as they may have, to which order, dismissing the Ohio River Coal Co. as a party in the action, the plaintiffs (here appellants) objected and excepted and from which they prosecute this appeal.

The chancellor upon entering this order, filed with it an opinion, briefly summarizing the background of the case and the record of the pleadings as hereinabove given and reviewed, wherein he set out his theory of the case and construction of the contract upon which was based his judgment, dismissing the coal company as a party and denying also plaintiff Long's right to sue as a beneficiary under the contract in question for its specific performance and upon the further ground that the contract was too indefinite and uncertain in its terms to be specifically enforceable.

However, the judgment further directed, inasmuch as Reiss' conduct in the premises may have impressed

the mining property held by him as its present owner with a trust in favor of the publicly owned $80,000 of bonds of the old Interstate Coal Co., that the parties join issue thereon and that the case be referred to a commissioner to ascertain and report whether or not the mining properties owned and held by Reiss' creature corporation, the Highland Creek Coal Co., are impressed with a constructive trust in favor of the bondholders of the now defunct Interstate Coal Co., and if so, in favor of whom and to what extent.

The case is still pending, it appears, in the Jefferson circuit court on Reutlinger's intervening petition, where nothing has been done by him to carry out the court's rulings other than merely having the case referred to a commissioner, as suggested by the court, in the fall of 1938.

To the appeal prosecuted from this holding and judgment of the court, the defendants (here appellees) moved that the appeal be dismissed, contending that the orders of the court from which the appeal was prosecuted were not final orders and therefore not appealable. This motion to dismiss was by the court overruled.

We deem it unnecessary to enter into an extended discussion of the propriety of such ruling, as clearly the order of the court dismissing the appellant Ohio River Coal Co. as a party in the action was a final order, such order coming clearly within the terms of Section 368, Civil Code of Practice, defining a "judgment" as "a final determination of a right of a party in an action or proceeding" and also within the definition of a "final order" as given in Maysville & Lexington R. Co. v. Punnett, 15 B. Mon. 47, 54 Ky. 47, and quoted with approval in Adkins v. Carol Mining Co., 281 Ky. 328, 136 S. W. (2d) 32, 35, as follows:

"A final order either terminates the action itself, decides some matter litigated by the parties, or operates to divest some right, in such a manner as to put it out of the power of the court making the order, after the expiration of the term, to place the parties in their original condition."

Turning now to the merits of the case, the question presented for decision is that of the propriety of the court's construction of the contract as being too uncertain to support a decree for specific performance and

of its ruling based thereon dismissing the appellant, Ohio River Coal Co., as a party in the action.

Counsel for the appellant coal company insist that it has a right to a decree of specific performance under the contract hereinabove set out and analyzed, on the theory that it is a third party for whose benefit the contract was made.

The principle that a third party who is not an express party to the contract may sue upon it, where claimed to be made for his benefit, is, as stated in the recent case of Ball v. Cecil, 285 Ky. 438, 148 S. W. (2d) 273, 274, that:

> "It is settled in this State, as well as most jurisdictions in America, that a third party for whose benefit a contract is made may maintain an action thereon; however, he must have been a party to the consideration or the contract must have been made for his benefit, and the mere fact that he will be incidentally benefited by the performance of the contract is not sufficient to entitle him to enforce it."

Further in 12 Am. Jur., Section 277, page 825, the "American Majority Rule," controlling in such case, is thus given:

> "Stated in general terms and leaving out of consideration the limitations recognized in various jurisdictions, the rule in a great majority of American jurisdictions is that a third person may enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. In other words, it is not necessary that any consideration move from the third party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party. This doctrine, originally an exception to the rule that no claim can be sued upon contractually unless it is a contract between the parties to the suit, has become so general and far-reaching in its consequences as to have ceased to be simply an exception, but is recognized as an affirmative rule, subject to certain limitations and exceptions."

Appended to this Section 277, supra, is footnote 5, wherein are cited many decisions of this jurisdiction showing its adoption of what is termed the "American Majority Rule" as to when a third person, though a

stranger both to the contract and the consideration, may enforce a promise claimed made for his benefit.

Further, Section 282 of this same authority sets out, as a limitation or exception to such rule with respect to incidental beneficiaries, that:

"The principle that one not a party or privy to a contract but who is the beneficiary thereof is entitled to maintain an action for its breach is not so far extended as to give to a third person who is only indirectly and incidentally benefited by the contract the right to sue upon it. An incidental beneficiary has no rights under the contract. A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach."

Further it appears from the allegations of the petition and same as amended, as well as from the terms of the contract itself, that if the appellant coal company had any beneficial interest under the terms of the contract involved, providing that should the appellee, Dr. Reiss, purchase the Interstate mining property at its foreclosure sale, engineered by him, he would thereupon convey it to a designated corporation to be organized and controlled by Mr. Long, subject to the terms of the contract, the interest of the coal company, when so organized by Mr. Long, in having Dr. Reiss specifically perform his contract to convey the purchased property to the organized coal company was very indirect and only incidental, and as such brought it within the exception to the general rule announced in the Cecil case, supra, and also in Sections 281 and 282, 12 Am. Jur., pages 833 and 834, wherein (Section 281) it is stated that:

"A third person for whose direct benefit a contract was entered into may sue for breach thereof; but if the benefit is only incidental, he may not. * * * It must appear, in order that a third person may derive a benefit from a contract between two other parties, that the contract was made and entered into directly or primarily for the benefit of such third person."

Further it appearing by the express terms of the contract in question that it was not made for the benefit of the Ohio River Coal Co., which was not then even in existence and did not come into existence until nearly two years after the contract was entered into between Dr. Reiss and Mr. Long, and that its makers, Long and Reiss, were not thereby seeking to protect or benefit the Ohio River Coal Co., but were trying to protect and benefit, as is therein expressly stated, "Dr. Reiss and any bond-holders who might cooperate with him," clearly the coal company was at most only an incidental beneficiary under the contract and its provision that a Long-controlled corporation was to be organized to accept from Dr. Reiss his conveyance of the property to it, subject to the terms of the contract, merely intended such corporation to serve as the instrumentality by which the benefit to Dr. Reiss and the cooperating bondholders might be secured and realized.

Such being our conclusion as to this, it is our view that the chancellor rightly construed the contract as one not intended to directly, if at all, benefit the corporation to be organized by Long and therefore that it was not such a beneficiary within the principle of the cases and text cited supra as entitled it to a decree compelling specific performance of the contract and properly dismissed it as a plaintiff in the action as not a party in interest to it.

Further it appears that while Mr. Long does not aver that he was a bondholder of the Interstate Coal Co., the contract yet recites that the bondholders thought he ought to help them salvage what could be salvaged of their bond investment, claimed made due to his connection with the company, such fact alone did not make him a beneficiary under the contract, although a party to it.

The beneficiaries under it are, as stated above, Dr. Reiss and the bondholders who cooperate with him and that case, it appears, is still pending undetermined in the lower court on Mr. Reutlinger's intervening petition.

Furthermore, the lower court in its opinion, after reviewing the facts, states under the heading of "Considerations" that:

"Specific performance is out; I know of no equitable process whereby the Reiss-Long contract of 1934

could be rendered down to a sufficiently certain residue to be specifically enforceable by court order.''

In other words, the lower court found that the contract was too indefinite and uncertain in its terms to adequately inform it as to what specific character of corporation was by the contract proposed to be organized and that it was unable to frame a decree compelling its specific performance, in that the contract failed to set out what was to be the capital structure of the corporation or any specific terms relating thereto other than it shall have authority to issue a first mortgage of $20,000 superior to Dr. Reiss' claim and then a second mortgage in the sum of $80,000 to secure a bond issue of that amount, presumably to be ratably distributed between Dr. Reiss and any bondholder who might cooperate with him.

Further, the contract, rendered uncertain by its failure to definitely provide for the capital structure of the corporation to be organized by Mr. Long to carry on the mining operation, was defective in that it lacked any mutuality of remedy. These omissions served to render the contract too uncertain and indefinite for the court to undertake to prescribe the duties of the parties and the court, in order to frame a decree compelling specific performance of such uncertain contract, would have been compelled to substitute its own judgment for that of the contracting parties in determining what should be the specific character of the capital structure of the corporation to be organized by Long before Dr. Reiss would have

The general principle governing in such case is, as stated in Page on Contracts, Section 3281, page 5783, vol. 6, that:

''To be enforceable, either at law or in equity, a contract must be definite and certain. Certainty is especially necessary if specific performance is sought, since the court must necessarily decree performance of the contract in such terms that the party against whom the decree is entered can ascertain from the decree itself what he is bound to do; and unless the contract itself is definite, the court can not frame a definite decree. The same idea is expressed in other words when it is said that the court can enforce a valid contract by specific performance, but that it can not make a contract for the parties if they have not made one for themselves in sufficiently definite terms.''

See also to like effect the case of Roberts v. Bennett, 166 Ky. 588, 179 S. W. 605, L. R. A. 1916C, 1098.

In Glenn v. Lowther, 219 Ky. 383, 293 S. W. 947, 949, we quoted with approval the following rule as to the certainty of contract required for decreeing specific performance announced in Hennessey v. Woolworth, 128 U. S. 438, 442, 9 S. Ct. 109, 32 L. Ed. 500:

> "Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case."

See further Williston on Contracts, Volume 3, Section 1424, dealing with specific performance and when same will be granted, wherein it is stated that:

> "A court of equity cannot grant specific performance unless a decree can be framed which states with same exactness what the defendant must do. This necessity makes a degree of certainty necessary for equitable enforcement of a contract which is not requisite for its enforcement at law. It is necessary not only that the defendant's duty under the contract shall be certain, but the plaintiff's also, since the decree must provide for that performance as well as the defendant's. But if there is sufficient expressed to make a legally valid contract, a court of equity can make certain by its decree, within reasonable limits, subordinate details of performance which the contract itself did not state."

It is also the general rule that a party seeking specific performance must show that he has performed or offered to perform or is ready, able, and willing to perform all the essential acts required by the contract. While a repudiation of the contract by the purchaser may excuse the necessity of tender of performance by the seller, the necessity on the part of the latter of being in a position at the proper time fully and completely to perform the contract is not dispensed with. 58 C. J. 1065 et seq.; Williamson v. Ingram, 243 Ky. 749, 49 S. W. (2d) 1005; Kuntz v. Peters et ux., 286 Ky. 227, 150 S. W. (2d) 665.

It is also to be here noted that although the appellant, Long, it is alleged, did continually demand of Dr. Reiss, following his purchase of the Interstate Coal Co.

property, that he convey it to a "to be" organized Long-controlled corporation, he never organized such corporation to accept conveyance of the coal lands from Dr. Reiss until nearly two years after Reiss had purchased the property and conveyed it to his creature corporation, which facts (counsel for appellees insist) were taken into consideration by the chancellor when denying appellant specific performance of the contract on the ground that he had forfeited his right thereto in part on the principle of laches, or by his omission to seasonably perform his part of the contract, which was necessarily a condition precedent to the appellee's conveying the purchased property to it.

Appellant's next and final insistance is that if mistaken in his contention that the appellant Long was such a third party beneficiary under the contract here involved as entitled him to enforcement of the promise claimed made for his benefit and also in his contention that the contract here involved was such in its terms as measured up to the requirements held essential in the case of McKnight v. Broadway Investment Co., 147 Ky. 535, 145 S. W. 377, to authorize a court of equity to compel specific performance, that it must be certain and definite as to its subject matter, stipulations, purposes, parties and the circumstances under which it was made (which contentions were adversely ruled on by the chancellor), the existing situation of the parties, alleged caused and brought about by appellee Reiss' misrepresentations, artifice and fraud employed by him to victimize his corporate associates in the corporate ventures engineered by him, is one calling for and justifying the imposition of a constructive trust upon the appellee.

It may be here said, as in the case of Motley's Adm'rs v. Tabor, 208 Ky. 702, 271 S. W. 1064, 1065, that:

> "As neither an express trust, nor a resulting trust, was shown, the only question we need consider is whether the facts are sufficient to establish a constructive trust. A constructive trust is one not created by any words either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice. * * * They are entirely in invitum and forced upon the conscience of the trustee for the purpose of working out right and justice or frustrating fraud."

See further, as to the nature and application of the rule of constructive trusts, 65 C. J., Section 215, p. 454; 26 R. C. L., Sections 78, 81, 82, 86, 89, 96 and 97; Huff v. Byers, 209 Ky. 375, 378, 272 S. W. 897.

For the reasons stated, the judgment of the chancellor is affirmed, with direction that issues be joined and proof taken on the theory of a constructive trust, as directed by the chancellor, and report made by the commissioner of his findings as to who were the cooperating bondholders, etc., and that a decree be entered by the chancellor in accordance with his conclusions based thereon.