The DANIEL BOONE CLINIC, P.S.C., Appellant,

v.

Abdulkader DAHHAN, M.D., Phyllis Carmical, and Mattie Greene, Appellees.

and

Phyllis CARMICAL and Mattie Greene, Cross-Appellants,

v.

DANIEL BOONE CLINIC, P.S.C. and Abdulkader Dahhan, M.D., Cross-Appellees.

and

Abdulkader DAHHAN, Appellant,

v.

DANIEL BOONE CLINIC, P.S.C., Phyllis Carmical and Mattie Greene, Appellees.

Court of Appeals of Kentucky.

June 19, 1987.

Dicretionary Review Denied by Supreme Court Aug. 26, 1987.

Susan Coleman Lawson and William R. Forester, Forester, Forester, Buttermore & Turner, P.S.C., Harlan, for appellant The Daniel Boone Clinic.

William A. Rice, Rice, Huff & Hendrickson, Harlan, for appellee Abdulkader Dahhan.

Mark David Goss, Goss, Brashear & Goss, Harlan, for appellees Phyllis Carmical and Mattie Greene.

William A. Logan, Logan & Morton, Madisonville, for amicus curiae G.E. Ainsworth, M.D., et al. d/b/a Trover Clinic.

Before DYCHE, MILLER and WEST, JJ.

DYCHE, Judge.

Daniel Boone Clinic (hereinafter "DBC") is a multi-specialty medical clinic with offices in Harlan, Middlesboro and Whitesburg. Outpatient care is given from those offices; inpatient care and emergency room care are provided by DBC staff at Appalachian Regional Hospital locations in the aforementioned three towns. Abdulkader Dahhan, M.D. was employed by DBC from 1974 through January 31, 1986, at which time his contract of employment expired and was not renewed by DBC.

Dr. Dahhan, who is a native of Syria, came to the DBC Harlan office following employment in a New York hospital. It is uncontested that prior to his employment with DBC, he had no medical practice established in the area, and he was unfamiliar with Eastern and Southeastern Kentucky. As is usual with this type arrangement, he was provided by the clinic with office space, support staff, equipment, supplies, and perhaps most importantly, patients.

Dr. Dahhan's contract provided for a salary (with bonuses and opportunity to participate in the DBC retirement program), annual holiday leave and paid vacation and continuing medical education compensation. In addition, the contract included a provision which forbade Dr. Dahhan from practicing medicine within fifty miles of the above mentioned three towns for eighteen months following the termination of his employment with DBC. This restrictive covenant provision was common to all contracts with physicians employed by DBC.

Immediately following the cessation of his employment with DBC, Dr. Dahhan opened an office for the private practice of medicine in Harlan, and advertised the fact in the local newspaper. DBC filed an action in the Harlan Circuit Court asking for an injunction to enforce the restrictive covenant, and seeking liquidated damages of $75,000.00, as provided in the contract. A temporary restraining order was issued forbidding Dr. Dahhan from the private practice of medicine within the fifty mile radius, citing the irreparable injury to DBC in the absence thereof. (The temporary restraining order was subsequently amended at DBC's request to permit treatment by Dr. Dahhan of his patients at the Appalachian Regional Hospital.)

Shortly after the temporary restraining order was issued, Phyllis Carmical and Mattie Greene filed a separate action asking for an injunction to prohibit enforcement of the restrictive covenant as to themselves and roughly 350 other patients of DBC who had been treated by Dr. Dahhan for chronic cardiac and pulmonary problems. The plaintiffs also asked certification of their suit as a class action.

The two actions were consolidated for trial by the court without intervention of a jury. On March 10, 1986 a judgment was issued which 1) denied certification as a class action; 2) ruled that patients and the general public were the third party beneficiaries of the contract between Dahhan and DBC, and as such, were entitled to timely and adequate notice (in writing, with proper proof of service) of *termination of treatment* (emphasis added); 3) found that no such notice had been given; and 4) restrained and enjoined enforcement of the restrictive covenant, denying damages to DBC or to Dr. Dahhan. The trial court emphasized the importance of the notice issue, saying, "This case is decided on the more narrow issue of the lack of notice to the patients." From this judgment, each party now appeals or cross-appeals.

We will first deal with whether or not the restrictive covenant is applicable to the facts in this particular case. Dr. Dahhan maintains that it has no application, as the contract provision forbids competition with DBC for 1½ years "following the *termination* of employment," and that his contract was not terminated, but simply expired, and simply was not renewed. (Emphasis added.)

■ Dr. Dahhan refers to the by-laws of DBC (incorporated by reference into the contract) as proof that the contract intends different meanings for "expire" and "terminate," citing the use of those two words and their derivatives within the contract. We are unconvinced by this comparison; reading the contract as a whole, we hold that "termination" means *ending*, however accomplished. This ending can come as a result of: 1) expiration of the contract; 2) affirmative act of the Board of Directors; or 3) affirmative act of the employee.

The next question is whether or not the restrictive covenant is enforceable in this particular case. Generally, such provisions are held valid, and not against public policy unless the particular circumstances of the case would cause serious inequities to result. *Lareau v. O'Nan*, Ky., 355 S.W.2d 679 (1962); *Hall v. Willard & Woolsey, P.S.C.*, Ky., 471 S.W.2d 316 (1971).

The record is sufficient to allow us to determine whether or not serious inequities would result from the enforcement of this contract under these particular circumstances. We find that no inequity would result from enforcing the restrictive covenant.

The trial court determined that the patients of Dr. Dahhan were third party beneficiaries of the contract between DBC and Dahhan, and as such, were vested with certain rights, most specifically the right to notice from the doctor or clinic before either could terminate treatment. Apparently the failure of DBC to give these patients timely and adequate notice is the serious inequity which the trial court found would prohibit enforcement of the restrictive covenant.

■ We do not share the view that the patients are third party beneficiaries of the contract between DBC and Dahhan entitling them to notice of the termination of

Dr. Dahhan's contract. Rather, we find the existence of two separate and distinct contracts, with different rights and responsibilities flowing under each.

The first contract is between DBC and its patients. Included in this contract is the duty of DBC to provide to its patients medical care which meets the professional standard of care required of all physicians. Should DBC deviate from this standard in any way, it would be liable to the patient in a negligence or malpractice action for the breach of that duty. The clinic, however, has no duty whatsoever to provide the patient with a particular physician of the patient's choice, nor does it have a duty to notify patients of personnel changes; should such a personnel change, however, lead to a situation where it was proved that a patient did not receive care which meets the required standard, the clinic would be liable for such negligence, but *not* for failing to notify the patient of the change. *Johnson v. Vaughn*, Ky., 370 S.W.2d 591 (1963).

The second contract is between DBC and Dr. Dahhan. This is an employment contract involving professional services. Although the patients are the ones served, they are only incidental beneficiaries of this contract. *Long v. Reiss*, 290 Ky. 198, 160 S.W.2d 668 (1942); *King v. National Industries, Inc.*, 512 F.2d 29 (6th Cir.1975). As such, they have no rights to interfere with the contract or its enforcement. As the doctor and clinic both entered into the contract willingly, and each has benefitted therefrom, the provisions of the contract will not now be repudiated by one of the parties.

The contract provided for liquidated damages of $75,000.00 to be paid by Dr. Dahhan to the clinic for violation of the restrictive covenant. The trial court refused to enforce this provision.

> Historically contract provisions specifying liquidated damages were viewed with disfavor, as devices to extract penalties and forfeitures and against public policy. (Citations omitted.) In time the rule evolved that such devices would be recognized as a useful commercial tool to avoid litigation to determine actual damages. But two restrictions remain: they should be used only (1) where the actual damages sustained from a breach of contract would be very difficult to ascertain and (2) where, after the breach occurs, it appears that the amount fixed as liquidated damages is not grossly disproportionate to the damages actually sustained. (Citation omitted.)

*Mattingly Bridge Co. v. Holloway & Son Construction Co.*, Ky., 694 S.W.2d 702, 705 (1985).

 We find that this case is particularly appropriate for the enforcement of the liquidated damages provision under the above standards.

In light of the above, we affirm the trial court's ruling on Dr. Dahhan's damage claim against DBC and deem it unnecessary to reach the class action issue. Otherwise, the judgment of the Harlan Circuit Court is reversed and remanded for proceedings not inconsistent with this opinion.

All concur.