**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0411n.06
Filed: July 9, 2008

**No. 07-5703**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PAUL BARITEAU, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PNC FINANCIAL SERVICES GROUP, INC., | ) | WESTERN DISTRICT OF KENTUCKY |
| et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: KEITH and SUTTON, Circuit Judges; and ACKERMAN, District Judge.[*]

SUTTON, Circuit Judge. In the late 1990s, Paul Bariteau lost nearly $14 million that he had

invested in the Military Channel after the company's vice president and chairman, Lenny Krane,

made several unauthorized withdrawals from the company's account with PNC Bank. In 2006, after

obtaining a default judgment against the judgment-proof Krane, Bariteau filed a complaint against

PNC, alleging that PNC had breached its agreement with the Military Channel (of which he allegedly

was a third-party beneficiary) and aided and abetted Krane's misdeeds. The district court dismissed

the complaint and denied Bariteau's post-judgment motion for leave to amend his complaint. We

affirm.

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District
of New Jersey, sitting by designation.

I.

On April 1, 1998, the board of directors of the Military Channel, a closely held corporation, adopted a resolution requiring two or more signatures for any withdrawal exceeding $1,000 from its account with PNC Bank. The resolution, which the Military Channel filed with PNC, listed Robert Mohr (the Military Channel's CFO), Pat Mulvey (its CEO) and Lenny Krane (its vice president and chairman) as the authorized signatories on the account. Later that month, Paul Bariteau, an individual investor, began supplying the Military Channel with equity and debt capital. Between April 1998 and July 1999, Bariteau invested over $10 million in the Military Channel. All the while, unbeknownst to Bariteau, Krane was misappropriating funds from the company's PNC account, making large withdrawals "authorized" only by himself. The misappropriations eventually took a toll on the Military Channel, forcing the company into bankruptcy in December 1999.

In April 2000, Bariteau filed a complaint against Krane, Mulvey and several other individuals and entities (not including PNC), alleging violations of the federal securities laws, RICO and Kentucky law. Bariteau obtained a judgment of more than $14 million against Krane, but he has not been able to collect because Krane, now a convicted felon, purports to be judgment proof.

In November 2001, the reorganized Military Channel and its bankruptcy estate sued PNC, alleging that PNC had breached its obligations under the company's April 1998 corporate resolution by failing to enforce the two-signature requirement. In July 2002, the parties agreed to dismiss that action with prejudice.

In March 2006, Bariteau filed a state-law complaint against PNC and several affiliated entities in federal court on diversity grounds. (Bariteau is a citizen of Kentucky, and the PNC defendants are Pennsylvania corporations with their principal places of business in Pennsylvania.) In May 2006, Bariteau filed an amended complaint, which alleges (1) that PNC breached its agreement with the Military Channel and that Bariteau was a third-party beneficiary of that agreement; (2) that PNC aided and abetted Krane's breach of fiduciary duty; (3) that PNC aided and abetted Krane's fraud; and (4) that, in the alternative, the contract should be reformed to reflect the parties' intention that Bariteau is a third-party beneficiary of it. The district court granted PNC's motion to dismiss and denied Bariteau's motion for leave to file a second amended complaint.

II.

We start with a few preliminaries. Kentucky law governs this case. We give fresh review to the district court's dismissal of a complaint under Rule 12(b)(6). *See Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007). And in reviewing a Rule 12(b)(6) dismissal, we generally restrict ourselves to "the allegations in the complaint" with two exceptions: (1) "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," and (2) "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis and internal quotation marks omitted).

A.

Bariteau first takes issue with the district court's conclusion that he was not a third-party beneficiary of the two-signature agreement between the Military Channel and PNC. Under Kentucky law, a "stranger" to a contract cannot exercise "the exceptional privilege of suing for a breach of an agreement to which he is not a party" unless he can show "that the contract was made and entered into directly or primarily for [his] benefit." *King v. Nat'l Indus., Inc.*, 512 F.2d 29, 32 (6th Cir. 1975) (internal quotation marks omitted); *see also Long v. Reiss*, 160 S.W.2d 668, 674 (Ky. 1942); *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985). To overcome "the presumption that the contracting parties did not intend to benefit a third party," *King*, 512 F.2d at 32, a claimed creditor beneficiary must show that "the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary," *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 n.12 (Ky. 2004) (quoting *King*, 512 F.2d at 33). Put another way, the question "is whether the parties intended the promisor to assume a direct obligation to the claimed beneficiary," *Young v. Kenneth Jackson Elec., Inc.*, No. 2005-CA-001242-MR, 2006 WL 2787077, at *2 (Ky. Ct. App. Sept. 29, 2006); otherwise, the claimed beneficiary "is at best an incidental beneficiary, a category of beneficiaries having no rights under the contract," *King*, 512 F.2d at 33; *see also Long*, 160 S.W.2d at 673.

Even if we accept for now that the corporate resolution was an agreement between PNC and the Military Channel—as opposed to a unilateral action by the Military Channel's board—Bariteau was at most an incidental beneficiary of the agreement. Nothing in the agreement itself offers any indication that it was designed to benefit Bariteau. *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). The agreement makes no mention of Bariteau, and he indeed was not even an investor in the company at the time the agreement was executed and did not learn of the agreement until after the company's bankruptcy. *See Long*, 160 S.W.2d at 674 (holding that a company was not a third-party beneficiary of a contract to which it was not a party because "it appear[ed] by the express terms of the contract in question that [the contract] was not made for the benefit of the [company], which was not then even in existence . . . until . . . after the contract was entered into"). Nor does the agreement mention others situated like him—the company's shareholders and creditors.

The agreement also did not impose a direct obligation on PNC to Bariteau or others like him. PNC's obligation, if any, was to the company—to ensure that withdrawals from the company's account were properly authorized. While Bariteau, like any stakeholder in the company, could have incidentally benefitted from the agreement, that type of benefit does not suffice under Kentucky law. *See King*, 512 F.2d at 33; *cf. Jenkins v. Best*, 250 S.W.3d 680, 696 (Ky. Ct. App. 2007) (holding that a hospital patient was not a third-party beneficiary of a contract between a hospital and a contracting physicians' group because the contract "was neither directly nor primarily for the benefit of the patient[]" but rather was "designed to allow [the h]ospital to represent itself . . . as a hospital capable of providing [certain] services"); *Daniel Boone Clinic, P.S.C. v. Dahhan*, 734 S.W.2d 488, 491 (Ky.

Ct. App. 1987) ("Although the patients are the ones served, they are only incidental beneficiaries of this [employment] contract [between a medical clinic and a physician]."); *Young*, 2006 WL 2787077, at *3 ("[T]he prevailing rule is that a property owner is generally not a third-party beneficiary of a contract between the general contractor and a subcontractor.").

Under these circumstances, we need not take sides on the parties' debate over the relevance of another provision, which apparently was part of the agreement between PNC and the Military Channel. "No third party," it says, "shall have any rights or claims against [PNC] under this agreement." JA 225. Because PNC sought judgment on the pleadings and because the authenticity, timing and location of this provision within the agreement remain points of contention, we opt not to rely upon it in resolving this appeal.

In urging us to reverse the district court's decision, Bariteau principally relies on Mohr's affidavit, which Bariteau attached to his original complaint and relied upon in his amended complaint. *See* JA 53 (amended complaint discussing the "Affidavit of . . . Mohr, dated October 31, 2003 and annexed to the initial complaint as Exhibit C"). The affidavit says that Bariteau was "one of the people whom [the agreement] was intended to protect" and that the "main purpose" of the agreement "was to guard against the risk of any single individual diverting funds from the account for his personal use or some other unauthorized expenditures." JA 23–24. The affidavit is unavailing for two reasons. One, when an agreement itself establishes that an individual is not a third-party beneficiary of it, extrinsic evidence generally has little role to play. *See Hoheimer*, 30 S.W.3d at 178; *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App.

2002). Two, even on its own terms, the affidavit confirms that Bariteau was at most an incidental beneficiary of the agreement. Sure, the affidavit says that the agreement would benefit Bariteau and the company's other key stakeholders, just as (we hope) the company's employment, supply, sales and other agreements would have done. But, as the affidavit also makes clear, the agreement would do so only indirectly—by "protect[ing] MCI [the Military Channel] from the risk of having *its* funds pilfered." JA 24 (emphasis added). That does not suffice under Kentucky law. *See United States v. Wood*, 877 F.2d 453, 457 (6th Cir. 1989) (applying Kentucky law and stating that the promisee must "intend[] to extract a promise *directly* benefiting the third party") (emphasis added) (quoting *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 309 (Ky. 1984)).

Nor does Bariteau gain traction by contending that, as a shareholder or creditor, he remained the owner of the money in the PNC account or that he somehow was the Military Channel, as opposed to a potential third-party beneficiary of its contracts. He points to no law, from Kentucky or elsewhere, to support this contention, or to any language in the relevant agreements that supports it either. And basic corporate law undermines the point. "It is elementary that title to the property of a corporation is in the corporation itself, not in its employees or stockholders . . . ." *Gregory v. Bryan-Hunt Co.*, 174 S.W.2d 510, 513 (Ky. 1943); *cf. Scoggan v. Dillon*, 252 S.W.2d 35, 37 (Ky. 1952) ("The deposit of money in a bank passes title and it becomes part of the assets of the bank with an implied contract that the sum will be repaid upon demand, the relationship of creditor and debtor being created."). We doubt, moreover, that Bariteau would accept this merging of his identity with the Military Channel's if the shoe were on the other foot—if the company's *liabilities*, as opposed

to its assets, were at issue. In the final analysis, only the Military Channel and its bankruptcy estate, of which Bariteau was a creditor, could directly recover from PNC. *See Collier v. Deering Camp Ground Ass'n*, 66 S.W. 183, 183 (Ky. 1902); *see also Allied Ready Mix Co., Inc. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 8–9 (Ky. Ct. App. 1998). Unfortunately for Bariteau, however, the Military Channel and its bankruptcy estate *did* sue PNC and later dismissed that action with prejudice, which would bar a subsequent action between the parties. *See Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits and has res judicata effect."); *Polk v. Wimsatt*, 689 S.W.2d 363, 365 (Ky. Ct. App. 1985) ("The dismissal of [an] action with prejudice precludes another action on the same matter.").

B.

Bariteau next contends that the district court erred in applying the five-year statute of limitations to his fiduciary-breach claim. *See Ingram v. Cates*, 74 S.W.3d 783, 787 (Ky. Ct. App. 2002); *see also* Ky. Rev. Stat. Ann. § 413.120(7). As he sees it, the court should have applied the discovery rule to toll the limitations period. We disagree.

The Kentucky legislature has been specific in extending the discovery rule to some actions but not to others. It has extended the rule to actions "for fraud or mistake[] referred to in subsection (12) of [Ky. Rev. Stat. Ann. §] 413.120," Ky. Rev. Stat. Ann. § 413.130(3), and to malpractice, stolen-property and other actions brought under Ky. Rev. Stat. Ann. § 413.140,

*see id.* § 413.140(2)–(3), (6); *see also Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 288 (Ky. Ct. App. 1998). But it conspicuously has not extended the rule to actions brought under § 413.120(7), the relevant subsection here.

The Kentucky courts at the same time have hesitated to extend the discovery rule beyond these statutorily prescribed causes of action. "With the exception of cases involving latent injuries from exposure to harmful substances, Kentucky courts have generally refused to extend the discovery rule without statutory authority to do so." *Secter*, 966 S.W.2d at 288; *see also Vandertoll v. Commonwealth*, 110 S.W.3d 789, 796 (Ky. 2003) ("Kentucky case law has previously limited the extension of the discovery rule primarily to causes of action arising from recovery of stolen property, medical or professional malpractice and latent illness or injury resulting from exposure to harmful substances."). No Kentucky case, to our knowledge or apparently to Bariteau's knowledge, has extended the rule to fiduciary-breach actions.

In seeking relief on this issue, Bariteau's argument thus comes down to a request that we extend the discovery rule beyond where the Kentucky legislature or courts have extended it. We rejected a similar request in *Lashlee v. Sumner*, 570 F.2d 107 (6th Cir. 1978), in which the plaintiff sought to apply the discovery rule to a libel action. Reasoning that "[t]he plaintiff ha[d] cited no [Kentucky] case in which the discovery rule has been applied to toll limitations in a libel case" and that the Kentucky courts have been reluctant to extend the discovery rule beyond what the legislature expressly has permitted, we rejected the plaintiff's request to extend the rule. *Id.* at 109–10. "If the highest court of Kentucky had not limited the application of the discovery rule," we reasoned,

"plaintiff's argument might be persuasive. However, the parties agree that the law of Kentucky controls, and we are not free to depart from it." *Id.* at 110. The same is true here.

*Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991), does not solve Bariteau's problem. A "breach of fiduciary duty is equivalent to fraud," the court stated, in addressing whether the attorney-client privilege applies to certain communications. *Id.* at 487. But the case says nothing about whether a breach of fiduciary duty is equivalent to fraud for discovery-rule purposes. *Steelvest*, moreover, was announced in 1991, and, eleven years later, the Kentucky courts decided *Ingram*, which held that fiduciary-breach actions fall within Ky. Rev. Stat. Ann. § 413.120(7), the catch-all subsection applicable to actions "not otherwise enumerated" in § 413.120. If, as Bariteau contends, the Kentucky courts view fiduciary-breach and fraud actions as equivalent for statute-of-limitations purposes, it is hard to understand why *Ingram* held that fiduciary-breach actions are covered by Ky. Rev. Stat. Ann. § 413.120(7) rather than by Ky. Rev. Stat. Ann. § 413.120(12), the subsection applicable to actions for "fraud or mistake." Bariteau has no answer to this point, and neither do we. We thus stand by the Kentucky courts' reluctance to extend the discovery rule beyond the causes of actions specifically authorized by its legislature, save for latent injuries, and thus affirm the district court's application of the five-year limitations period to Bariteau's fiduciary-breach claim.

C.

Bariteau next argues that the district court erred in dismissing his aiding-and-abetting-fraud claim. We disagree.

Kentucky's five-year statute of limitations, as an initial matter, bars this claim as well. *See* Ky. Rev. Stat. Ann. § 413.120(12). The alleged fraud occurred in the late 1990s, yet Bariteau did not file this claim until May 30, 2006. The discovery rule, it is true, *does* cover fraud claims, *see* Ky. Rev. Stat. Ann. § 413.130(3), but that rule does not help Bariteau. "On February 22, 2001," Bariteau admits that he "served a comprehensive subpoena on PNC which sought inspection and copying of documents" and that, "[o]n April 20, 2001, PNC provided [him with] bank statements, signature cards *and the April 1, 1998 corporate resolution*." Br. at 15 (emphasis added). By April 2001, moreover, Bariteau no doubt had knowledge of Krane's unauthorized withdrawals; he sued Krane in 2000, and his amended complaint in that action (filed in February 2001) listed several of the illicit withdrawals or transfers. Armed with that information, Bariteau discovered or at least "should, in the exercise of ordinary care and diligence, have . . . discovered" that he had "been wronged" and that "his injury may have been caused by [PNC's] conduct." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (internal quotation marks omitted); *see also Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641 (6th Cir. 1986) (applying Kentucky law and stating that "the statute [of limitations] begins to run from the date the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct") (internal quotation marks omitted). Why else would he

subpoena PNC? Yet he did not file his fraud claim until May 2006, more than five years later. Under Bariteau's own pleadings and attached documents, this claim fails as a matter of law.

The claim contains a second defect as well. As the parties both acknowledge, Kentucky recognizes a claim for aiding and abetting tortious conduct, *see Steelvest*, 807 S.W.2d at 485–86, and its courts rely on the Restatement (Second) of Torts § 876 in describing the contours of the claim, *see Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. Ct. App. 1988). Section 876 provides that "one is subject to liability if he (a) does a tortious act in concert with [another] or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876 (1979). Bariteau does not challenge the district court's conclusion that he failed to state a claim under subsection (a). The question, then, is whether the district court erred in concluding that he failed to state a claim under subsection (b) or (c).

A claim under § 876(b) has "two elements: (1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act." *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 533 (6th Cir. 2000) (internal quotation marks omitted). In maintaining that he pleaded these elements, Bariteau points to these allegations in his complaint: (1) that PNC "had knowledge of Krane's fiduciary duty and knowledge that he was breaching" that duty by violating the corporate resolution, JA 58, (2) that

PNC "recklessly aided and abetted Krane's breach of fiduciary duty in numerous ways," including by failing to enforce the two-signature resolution, JA 58–59, (3) that "Krane's repeated breaches of fiduciary duty to Plaintiff Bariteau frequently constituted acts of fraud as well," JA 61, and (4) that PNC "knowingly or recklessly assisted [Krane] in consummating the fraud," *id*.

None of these allegations helps Bariteau. Fraud at a minimum requires "that the declarant made a material misrepresentation to the plaintiff." *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007); *see also Torres v. Am. Employers Ins. Co.*, 151 F. App'x 402, 412 (6th Cir. Oct. 7, 2005). And "both the Federal and Kentucky Rules of Civil Procedure [require], in all averments of fraud or mistake, the circumstances constituting fraud or mistake [to] be stated with particularity." *Torres*, 151 F. App'x at 412 (internal quotation marks omitted). Yet nowhere in his amended complaint does Bariteau allege that PNC had actual knowledge that Krane was making material misrepresentations to him, let alone provide any examples of those misrepresentations. Nor does Bariteau allege that PNC substantially assisted Krane in making any material misstatements to him, let alone any particular misstatements. This last failing also seals the fate of Bariteau's claim under § 876(c), which, like § 876(b), requires substantial assistance. The district court did not err in concluding that Bariteau's amended complaint fails to state a claim for aiding and abetting fraud.

D.

Bariteau next argues that the district court erred in dismissing his action for reformation of the two-signature agreement. To reform a contract (here, to make Bariteau a third-party beneficiary of it), the claimant must show a "(1) mutual mistake or (2) mistake on the part of one party and fraud on the part of the other." *Grigsby v. Mountain Valley Ins. Agency*, 795 S.W.2d 372, 374 (Ky. 1990); *see also Gray v. First Nat'l Mortgage Co.*, No. 2002-CA-000700-MR, 2003 WL 1343470, at *1 (Ky. Ct. App. Feb. 21, 2003). Because Bariteau was neither a party to nor a third-party beneficiary of the contract, it is far from clear that he can bring a reformation action. But, for present purposes, that does not matter because Bariteau loses either way. Rather than allege mutual mistake or fraud by PNC, he alleged simply that there was a unilateral "mistake in the execution of [the] contract"—that PNC in other words made "the mistake of entering into the . . . resolution contract and allowing its employees to disburse money . . . in a manner inconsistent with the contract." JA 61–62. But that is not an allegation that, because of fraud or mutual mistake, the contract does not reflect the parties' intention that Bariteau is a third-party beneficiary of the contract. *See Gray*, 2003 WL 1343470, at *1. Indeed, nothing in Bariteau's amended complaint suggests that *PNC* intended Bariteau to be a third-party beneficiary of the contract or that PNC defrauded the Military Channel during the contract formation.

E.

After coming up short on each of these claims in front of the district court, Bariteau sought leave to file a third complaint. The proposed complaint would have added an allegation of mutual mistake and named the Military Channel as a plaintiff.

The district court did not err or otherwise abuse its discretion in denying the motion. *See Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 288 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 346 (6th Cir. 2007). The third complaint would have prejudiced PNC: It was filed over seven years after the underlying fraud and only *after* the district court had dismissed Bariteau's amended-once-before complaint. Nor has Bariteau offered a legitimate explanation for failing to seek leave to amend prior to the entry of judgment. *See Commercial Money Ctr.*, 508 F.3d at 347 (affirming the denial of a post-judgment motion to amend that the district court characterized as an attempt by the plaintiff "to reargue its failed theories and get a new 'bite at the apple'" and stating that, "in the post-judgment context, competing interests in finality of judgments and the expeditious termination of litigation require that courts be mindful of not only prejudice to the opposing party but also the reasons the movant failed to seek leave to amend earlier") (internal quotation marks omitted).

The amendment to add the Military Channel as a plaintiff also would have been futile. The Military Channel had already sued PNC for its alleged failure to enforce the corporate resolution, and the parties voluntarily agreed to dismiss that action with prejudice, which would bar a

subsequent action by the Military Channel against PNC.  *See Warfield*, 267 F.3d at 542; *Polk*, 689

S.W.2d at 365.

III.

For these reasons, we affirm.