MARTHA CRAIG DAUGHTREY, Circuit Judge,
concurring in part and dissenting in part.
Citing Olshan Foundation Repair and Waterproofing v. Otto, 276 S.W.3d 827, 831 (Ky.Ct.App.2009), the majority notes that “Kentucky law directs courts to consider *964 surrounding circumstances in the third party beneficiary context.” Majority Opinion at 960. After examining extrinsic evidence in this case, the majority concludes that Cameo, LLC, was an intended beneficiary of a Product Supply Agreement between Prime Finish, LLC, and ITW Deltar IPAC, and can, therefore, intervene in Prime Finish’s suit against ITW for breach of the agreement. My evaluation of the “surrounding circumstances” leads me to the opposite conclusion. I thus respectfully dissent from the majority’s determination on Cameo’s third-party-beneficiary assertion. I do, however, concur in Part IV of the majority’s opinion that holds that Prime Finish did not assign to Cameo its right to receive early-termination penalty payments from ITW.
In light of its decision that Prime Finish did not effectively assign to Cameo the right to receive penalty payments from ITW, the majority correctly notes that, “[t]o avoid summary judgment, Cameo must demonstrate ... that it is an intended creditor beneficiary of the Supply Agreement....” Majority Opinion at 959. Indeed, the federal courts and the courts of Kentucky have long recognized that before a non-party to a contract may sue for the breach of that agreement, the non-party must establish that the contract was entered into for its direct benefit. In German Alliance Insurance Co. v. Home Water Supply Co., 226 U.S. 220, 280, 33 S.Ct. 32, 57 L.Ed. 195 (1912), for example, the United States Supreme Court explained, “Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.” (Emphasis added.) Likewise, the highest court in Kentucky has pointedly held, “It must appear, in order that a third person may derive a benefit from a contract between two other parties, that the contract was made and entered into directly or primarily for the benefit of such third person.” Long v. Reiss, 290 Ky. 198, 160 S.W.2d 668, 674 (1942) (emphasis added).
An examination of the wording of the Supply Agreement in this case contains no indication whatever of an intent on the part of ITW or Prime Finish to benefit Cameo directly or primarily. In fact, Cameo’s name appears nowhere in the wording of the agreement between the actual parties to the contract.
To counteract that obvious roadblock to its attempt to convince the judiciary of its stake in the agreement, Cameo advances a two-pronged argument. First, the company asserts that “it was prominently involved throughout the Supply Agreement negotiation process.” Majority Opinion at 961. Nicholas Herbert-Jones, the sole owner of Cameo, emphasizes that “he was present at many meetings between ITW and Prime Finish prior to the formation of the Supply Agreement,” and that “[h]e was involved in the drafting of the Supply Agreement and emailed with ITW officers about the contract during negotiations.” Id. In fact, in the separate Production Agreement between Prime Finish and Cameo, the following language appears: “Cameo hereby agrees and acknowledges that Cameo drafted and agrees to the terms and conditions set forth in the Product Supply Agreement between [Prime Finish] and ITW.”
Rather than supporting Cameo’s third-party-beneficiary status, however, such information actually militates against the position Cameo seeks to advance on appeal. In Kentucky, as in almost all other jurisdictions, any ambiguity in a contract is to be construed against the drafter of the contract language. See, e.g., Theatre Realty Co. v. P.H. Meyer Co., 243 Ky. 346, 48 S.W.2d 1, 2 (1932); Weinberg v. Gharai, 338 S.W.3d 307, 313 (Ky.Ct.App.2011). Because Cameo admittedly crafted the lan *965 guage that defines the agreement, we should presume that, had Cameo intended to preserve its rights against ITW for receipt of the penalty payments, it would have included such an explicit provision in the very contract that it drafted. Its failure to do so thus should be taken as an indication that Cameo was not intended to be a direct or primary beneficiary of the Supply Agreement between Prime Finish and ITW.
Cameo next contends, however, that the nearly contemporaneous Production Agreement between Prime Finish and Cameo somehow evidences an intent on the part of ITW to obligate itself to Cameo. Although both the Production Agreement and the subsequent Modification Agreement between Prime Finish and Cameo define the rights and obligations of those entities vis-a-vis each other, the fact remains that neither agreement creates any right of Cameo against ITW directly.
In the absence of evidence that ITW ever intended to benefit Cameo directly by agreeing with Prime Finish to the terms of the Production Agreement, I conclude that the district court appropriately granted ITW summary judgment on Cameo’s intervening complaint. I thus respectfully dissent from the majority’s conclusion to the contrary.