## Euster v. Vogel.

## Same v. Ellis.

(Decided February 8, 1929.)

736

MORRIS & JONES, R. L. MADDOX, C. R. LUKER, FINLEY HAMILTON and CHARLES A. WOOD for appellant.

WM. LEWIS & SON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On the 25th day of July, 1926, the appellee A. G. Vogel was driving his automobile, a Chrysler 72, along the Dixie highway between London and Corbin. The appellee, Mrs. Lizzie Ellis, a relative by marriage, was with him in the machine. As he was crossing a ravine on a high fill, where the road was somewhat narrow, a Studebaker machine, going in the opposite direction, and driven by Lillian Euster, collided with his machine. As a result of the collision both machines were precipitated to the ground at the base of the fill. The appellant, Robert Euster, who was the father of Miss Lillian Euster, her brother, Aham Euster, her sister, Miss Freda Euster, and another brother, were riding in the Studebaker machine with Miss Lillian Euster at the time of the accident. There was evidence to sustain the theories of both sides to this controversy as to how this accident happened. Each side claimed that, while its machine was on the right side of the road, the other's machine swung to the wrong side of the road in the effort to pass without any warning an automobile just in front of it and going in the same direction, and that the collision was thereby brought about. It is not disputed but that which machine was in fault was a question for the jury, and that its finding, that it was the Euster machine, is not supported by sufficient evidence.

The Vogel machine was practically destroyed by the collision, and both Vogel and Mrs. Ellis received personal injuries of a more or less serious nature. They both brought suit against Robert Euster to recover for the injuries they had thus sustained, and on separate trials in the court below the jury awarded Mrs. Ellis a verdict of $3,000 and Vogel a verdict of $2,000. From the judgments entered on those verdicts these appeals are prosecuted. As the two cases in the main involve the same questions, they were heard together in this court, and will be disposed of by this one opinion.

The defense of Robert Euster, besides the claim of negligence on the part of the owner of the Vogel car, and the denial of any negligence on the part of the driver of the Euster car, was that he was not the owner of the Euster car, and had nothing to do with its maintenance or operation, and that it belonged to his daughter, Miss Lillian Euster, and her stepmother, his present wife, who only were responsible for its maintenance and operation. In the Ellis case, which was tried first, the only evidence which Mrs. Ellis produced to establish ownership of the Euster car in Robert Euster was the testimony of Vogel, to the effect that at the time of the accident he asked Robert Euster to whom the Euster car belonged, and Robert Euster replied that it was his. She also produced a letter, written by Robert Euster to Vogel some time after the accident, which reads in part: ''We will ask you to kindly send us a check for $52.00 damages we sustained last Sunday in an accident as we think it is much proper to settle same without any difficulty.''

On the other hand, Robert Euster, after denying that he made the admission as to ownership claimed by Vogel, testified that he did not own, maintain, or operate the car, that it was bought in 1922 by his daughter, Miss Lillian, and by his wife, Mrs. Robert Euster, the stepmother of Miss Lillian, out of their own funds. To corroborate his statement, he produced the bill of sale made out by the Studebaker agency which sold the car, and in which Miss Lillian and Mrs. Euster were named as the purchasers. He also produced the city clerk of Middlesboro where he lived, and by him established that the city license for 1926 was in the name of these ladies. He also introduced in evidence an insurance policy for the year 1926, insuring these ladies against liability on acount of the operation of this car. His son, Aham, and his daughter, Miss Freda, gave like testimony, although in the Vogel case there was evidence to show that after the accident Aham referred to the Studebaker car as ''his father's car which had been in an accident,'' which alleged statement was denied by Aham Euster. The appellant's wife, of course, was not a competent witness, and Miss Lillian was in New York at the time these cases were tried, and did not give her testimony either in person or by deposition. On this state of the evidence in the Ellis case, appellant insists that he was entitled to a peremptory instruction, on the ground that the evidence estab-

lished that he was not the owner of the car and had nothing to do with its maintenance or operation at the time of the accident. In support of his contention he cites the case of Scheible v. Kalkoff, 210 Ky. 789, 276 S. W. 846. In that case Mr. and Mrs. Scheible both testified that the automobile involved in the accident, which was the subject-matter of the suit, belonged to Mrs. Scheible. The only evidence produced to show that it belonged to Mr. Scheible was the testimony of F. W. Kalkoff, who said that Mr. Scheible, when visiting him to find out how he was getting along, admitted that the car was his. This conversation was denied by Scheible. We there held that the finding of the jury, that the car belonged to Mr. Scheible, was flagrantly against the evidence. We did not say, however, that Mr. Scheible was entitled to a peremptory instruction. On the contrary, it is plain that he was not, because the evidence of the alleged admission on his part furnished the necessary scintilla to carry the case to the jury. It therefore follows that the appellant was not entitled to a peremptory instruction in the Ellis case. In view of the instructions, we cannot tell whether the jury found that the Studebaker car belonged to, or was maintained by, the appellant or not, as we shall more fully point out presently, but whether, even if it be conceded that the jury found in the affirmative on this proposition, its verdict is flagrantly against the evidence or not, we will not on this appeal decide, since the case must be reversed for other reasons, and the evidence on this question on the next trial may be different from that heard on the last.

In the Vogel case, to support the proposition that the Euster car belonged to the appellant, Vogel not only testified, as he did in the Ellis case, but he also produced two other witnesses, one of whom unequivocally corroborated Vogel's statement that Robert Euster admitted the ownership of the car, and the other of whom stated that he "thought" Robert Euster made that statement at the time of the accident. Vogel also produced the state and county automobile license for the year 1926, which showed this car was licensed in the name of Robert Euster. Robert Euster did not testify in the Vogel case, because he was not permitted to do so, due to the fact that he had introduced another witness before he offered himself. As a result, all the testimony he had in the Vogel

case was the statements of his son and daughter, to the effect that their sister and stepmother owned the car, and that of his son was called in question by other statements made by him, as hereinbefore set out. As the appellant was not entitled to a peremptory instruction in the Ellis case, because of failure of proof that he owned the Studebaker car, so was he not entitled to any such instruction in the Vogel case. Further, in the state of the record in this Vogel case, a verdict of the jury, that the car belonged to Euster, would not be flagrantly against the evidence.

The next ground for reversal in both cases is directed to the instructions. The instructions in both the Ellis and the Vogel cases appear not only in the bill of exceptions, but also in the transcript of the evidence, which, of course was made part of the bill of exceptions, as if copied at length therein. In the Vogel case there is no discrepancy between the instruction complained of, as it appears in the transcript of the evidence, and as it appears in the bill of exceptions, but there is such a discrepancy in the Ellis case. There has been sent to us the original instructions, which, as typewritten, correspond to those in the transcript of the evidence in the Ellis case, but, as corrected in ink, seemingly in the handwriting of the judge, corespond to those in the bill of exceptions. Of course we are not privileged to consider these original instructions for the purpose of correcting a bill of exceptions, which it is not claimed the clerk, in making up the record, copied wrongly, because the place to correct a bill of exceptions is in the lower court, and not here. See Center Lumber Co. v. Miller, 158 Ky. 130, 164 S. W. 318. The reason for the rule is peculiarly apparent here, because the presiding judge knows, as we cannot know, whether the interlineations were made by him or not and as part of the instructions given to the jury.

We are still confronted, however, by the discrepancy between the instructions in the transcript of the evidence and those in the bill of exceptions. While it is true that we have said that, in certain cases, a transcript of the evidence, when properly certified to by the judge, may be used as a bill of exceptions, L. & N. R. Co. v. Stewart's Adm'r, 207 Ky. 516, 269 S. W. 555, yet, where a regular bill of exceptions appears in the record, and any such discrepancy appears as does in the Ellis case, the bill of exceptions must control. Under the Code, that is

where the instructions should appear. If also copied in the transcript of the evidence, that is so much surplusage, for, properly speaking, the instructions have no proper place in the transcript of the evidence, except in that state of case, not here present, where the transcript of the evidence is filed as the bill of exceptions.

What we have said being true, we must take it that the instruction complained of in the Ellis case was given to the jury in the identical form it was given to that body in the Vogel case. So far as pertinent this instruction reads: ''If the jury believe from the evidence that the car in which the defendant, Robert Euster, was riding at the time was owned or claimed by him, or that said car was at said time and place being operated by the members of the family of the defendant, Robert Euster, with his knowledge and consent, and for the purpose for which it was kept,'' then the law of the case was for the plaintiffs, if the jury further found that the driver of the Euster car was guilty of any negligence as also set out in the instruction. In so far as this instruction undertook to submit to the jury the question of liability on the part of the appellant under the family purpose doctrine, it was erroneous. It did not make the liability turn on whether the appellant owned, maintained or provided the automobile for his family's use or not, but simply on whether that automobile, no matter by whom owned, maintained, or furnished for such operation, was used for the purpose intended—no matter by whom intended —if done with appellant's knowledge and consent.

We are cited to no case sustaining any such principle. On the contrary, one of the indispensable requisites of the family purpose doctrine is that the person, upon whom it is sought to fasten liability under that principle, owns, maintains, or provides an automobile for the general use, pleasure, and convenience of the family. See 42 C. J. 1080. This principle underlies all our cases in which the family purpose doctrine was involved. Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224; Doss v. Monticello Light Co., 193 Ky. 499, 236 S. W. 1046; Miller v. Weck, 186 Ky. 552, 217 S. W. 904; Holland v. Goode, 188 Ky. 525, 222 S. W. 950; Rauckhorst v. Kraut, 216 Ky. 323, 287 S. W. 895; Kennedy v. Wolf, 221 Ky. 111, 298 S. W. 188; Bradley v. Schmidt, 223 Ky. 784, 4 S. W. (2d) 703, 57 A. L. R. 1100. See also 14 Kentucky Law Journal, 201, et. seq.

On the next trial, the court will omit from the instruction complained of so much as we have quoted above, and, in lieu thereof, will submit to the jury whether or not the Studebaker automobile at the time of the accident was owned, maintained, or provided by the appellant for the general use, pleasure, or convenience of his family, and whether or not, at the time of the accident, his daughter, Lillian Euster, was operating the Studebaker automobile for such use, pleasure, or convenience of appellant's family, with the knowledge or consent of the appellant.

Some complaint is made about the damages in both cases being excessive, but, as different verdicts may be rendered on the next trials, this question is reserved in both cases.