## Barr v. Searcy.

Oct. 24, 1939.

536

D. E. Woolridge for appellant.

J. Ballard Clark and H. H. Roth for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On September 16, 1936, an automobile owned by appellant, W. L. Barr, and driven by his infant daughter, Bernice Barr, collided with a truck owned by Mrs. Lillian B. Searcy. The collision occurred in the town of Bedford in Trimble County at the intersection of U. S. Highway 42 and Kentucky Highway 37. The truck was traveling west on highway 42, and the Barr automobile, traveling north, entered the intersection from highway 37. The truck swerved to the right, ran into a concrete wall, on the north side of highway 42, and was practically demolished. Mrs. Searcy brought this action against Barr, predicating his liability on the family purpose doctrine, to recover $1,390.39 damages to the truck and $300 for loss of its use. According to the preponderance of the proof, the collision occurred at a point to the right of the center of highway 42·in the direction in which the truck was traveling. Miss Barr, the driver of the automobile, admitted that she did not stop before entering the intersection, and that she did not know she was approaching highway 42. Buildings are located on each side of highway 37 at the intersection, and an automobile approaching the intersection from highway 37 cannot be seen by travelers on highway 42. The proof shows there was a stop sign at this point on highway 37. On the trial of the case the plaintiff recovered a judgment for $470 for the damages to the truck and $80 for loss of the use of the truck, and the defendant has appealed. The appellant's principal contention is that the family purpose doctrine does not apply to the facts of this case.

Appellant is a merchant and lives in LaGrange, Kentucky. He purchased the automobile in question in 1933, and had the license issued in his name. It was so licensed each year thereafter, and he paid the license fee and the ad valorem taxes. The cost of repairs on the automobile and the operating expenses were paid out of the store account in which it appears all members of his family had an interest. At the time the

automobile was purchased, appellant's family consisted of himself, his wife, James Barr, an adult son, Mildred Barr, an adult daughter, and Bernice Barr, an infant daughter, all of whom lived at appellant's home. James Barr married in 1935, and therafter lived in his own home in LaGrange. James Barr worked at his father's store and, after his marriage, kept the automobile at his home and used it daily in going to and from the store. Appellant was unable to drive his automobile, but Mildred Barr drove it frequently and it was driven occasionally by Bernice Barr, though she was an inexperienced driver. On pleasure trips it was usually driven by James Barr, and he was sometimes accompanied by his father, mother and sisters. On the day of the accident James Barr had driven the automobile to the store and parked it on the side of the street. Bernice Barr, who was 17 years of age, testified that she took it without obtaining anyone's permission, and accompanied by another young woman, drove to Campbellsville and then to Bedford where the accident happened. The appellee Lillian B. Searcy, testified that, accompanied by her attorney, she went to appellant's place of business soon after the accident and had a conversation with him in which he said that he had no insurance and that he had let his daughter have his car, but would never let her have it again. Mr. H. H. Roth, the attorney who was preesnt, testified as follows:

> "Mr. Barr seemed quite excited, said that he didn't have any insurance on his car, and didn't know how he was going to pay the damage to the truck, that he let his daughter have it that time, but she certainly never would get it again."

There was ample proof to take the case to the jury on the issue as to whether or not appellant maintained the automobile for the use and pleasure of the family and whether or not it was being so used at the time of the accident. Euster v. Vogel, 227 Ky. 735, 13 S. W. (2d) 1028. If Bernice Barr had charge of the car at the time of the accident with the implied consent or tacit acquiescence of her father, then he would be liable for any negligence in its operation when in her possession and while under her control. Wells v. Lockhart, 258 Ky. 698, 81 S. W. (2d) 5.

In paragraph 4 of his answer, counterclaim, and cross-petition the defendant alleged that the plaintiff's

truck was insured against collision and accident with some insurance company, the name of which was unknown to him, and that after the accident the plaintiff made claim against her insurer for her loss and the insurance company thereupon paid the claim and settled with the plaintiff and she assigned the claim to the insurance company; that plaintiff therefore had no further right, claim or interest in the matter, and the insurance company alone had a claim if any there be. A demurrer to paragraph 4 of the answer was sustained with leave to amend, and the defendant later filed an amended answer in which he alleged that the plaintiff was insured against loss by reason of damage to her truck caused by a collision; that her insurer was Royal Exchange Assurance, a corporation; and that the insurance company had paid to her the sum of $1,200 in full settlement of the claim which was assigned to the insurance company. A demurrer to the amended answer was sustained. It is appellant's contention that Lillian B. Searcy is not the real party in interest and has no actual interest in the matter, since she carried insurance on her truck, collected the insurance, and assigned the claim to the insurance carrier, and therefore that she had no right to maintain this action. He cites and relies upon Monson v. Payne, 199 Ky. 105, 250 S. W. 799, but in that case the plaintiff had settled and adjusted with the tort-feasor his whole claim against it. The plaintiff owned certain buildings which were destroyed by fire allegedly caused by the negligence of the railroad company. The buildings were insured. The owner and the railroad company entered into a written agreement of compromise, settlement, and discharge of the claim, and, when this fact was made to appear in an action subsequently instituted by the owner against the railroad company, the petition was dismissed. In affirming the judgment, this court distinguished the case from Illinois Central Railroad Company v. Hicklin, 131 Ky. 624, 115 S. W. 752, 23 L. R. A., N. S., 870, and said [199 Ky. 105, 250 S. W. 802]:

"Here the situation is wholly different. The right of action which the property owners had against the tort-feasor has been extinguished by the settlement, and they no longer have the right to prosecute the same in their own names and for their own benefit, and it therefore follows that a judgment in this case in favor of the plaintiffs on a cause of action

which has been extinguished by the settlement would not be a protection to the railroad company as against the insurance companies in any action the latter might institute against the wrongdoers growing out of their subrogation to the rights of the plaintiffs."

In the Hicklin case the plaintiffs owned a house which was destroyed by fire. They brought an action against the Illinois Central Railroad Company to recover damages in the sum of $1,100, alleging that the house had been destroyed by the negligence of the railroad company in permitting sparks to escape from its engine and alight thereon. In the second paragraph of its answer the defendant alleged that the plaintiffs' house was insured for the sum of $700, which was its full value, and they had collected from the insurers $700 on account of the fire, which fully repaid them for any loss they sustained by reason of the fire, and it further alleged that if there was any liability the insurance company alone was entitled to recover. A demurrer to this paragraph of the answer was sustained, and, in affirming the judgment, this court said [131 Ky. 624, 115 S. W. 753, 23 L. R. A., N. S., 870]:

"It may be that, as between plaintiffs and the insurance company, the latter would be equitably entitled to the damages that plaintiffs recovered. The fact, however, that a third party might be entitled to the damages as between him and plaintiffs, is not sufficient to bar the right of action by the plaintiffs. The legal title to the property destroyed was in the plaintiffs. As between the plaintiffs and the defendant the former were the real parties in interest. It is immaterial to the railroad company what may be the equities between the plaintiffs and the insurance company. All that it can demand is that a judgment in favor of the plaintiffs will be a complete defense to any further action for the same cause. In our opinion the judgment in favor of plaintiffs is conclusive, and no action can now be maintained against the railroad company by the insurance company. Any right of action the insurance company may have is against the plaintiffs."

The present case is on all fours with the Hicklin case, and that case is controlling here.

Appellant complains of the instructions, and particularly of that part of instruction No. 1 which told the jury that it was the duty of the driver of the Barr automobile "to stop and not go on to Highway No. 42 until it was reasonably safe to drive on to Highway No. 42, without colliding with persons or vehicles approaching on Highway No. 42, and exercise ordinary care to avoid colliding with plaintiff's truck." It is argued that the two highways are of equal class, and that a vehicle operated on Highway 37 is not required to stop before entering Highway 42. Section 2739g-37 of the Kentucky Statutes reads:

> "Except where otherwise directed by traffic officer, the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of intersection of their paths than such first named vehicle. Provided, that a vehicle being operated on any inter-county seat highway, designated state highway, or boulevard, or any street which may have by ordinance be designated as being equal in importance to a boulevard, shall not be required to observe the foregoing regulations where any such highway intersects another highway of a lesser class. Any vehicle operated on the lesser class highway shall be required to stop before entering said inter-county seat highway or highway of higher class."

The proof shows that highway 42 is the main artery of travel between Cincinnati, Ohio, and Louisville, Kentucky, while highway 37 is a lower type road, much narrower, and less traveled than highway 42. A stop sign had been placed at the intersection on highway 37. The proof shows that highway 42 was a highway of a higher class than highway 37 within the intent of Section 2739g-37, and therefore it was the duty of the driver of the Barr automobile to stop before entering the intersection.

Instruction No. 2, which defined the measure of damages, authorized the jury to find for the plaintiff, in addition to the damages to the truck, "the reasonable value of the use of said truck for the time she was unable to supply its use, as a direct result of the collision, not to exceed the sum of $300.00."

It is insisted that there was no proof as to the value of the use of the truck, and that this part of the instruction was erroneous. Plaintiff's receipts from the operation of the truck had amounted to as much as $120 a week, and her only expenses were the wages of the driver, amounting to $20 a week, and the cost of gasoline and oil required in the truck's operation. Plaintiff was hauling merchandise under contract from Cincinnati to St. Louis for which she received $40 a round trip. The truck made three trips a week. It was also shown that the plaintiff was unable to replace the truck for several weeks after the accident. We think the evidence was sufficient to authorize the instruction on the loss of the value of the use of the truck.

Instruction No. 4, which defined the duties of the driver of appellee's truck, failed to tell the jury that it was his duty to sound a horn as a warning of the approach of the truck, and appellant complains of this. Section 2739g-28 of the Kentucky Statutes provides that every person operating an automobile shall sound the horn or other sound device whenever necessary as a warning of the approach of such vehicle to pedestrians or other vehicles. The proof for appellee tended to show that the driver of appellant's automobile, without stopping at the intersection, drove onto highway 42 immediately in the path of the truck so suddenly that the driver of the truck had time only to swerve his truck to the right in an effort to avoid the collision. Miss Barr, the driver of the automobile, testified that when she drove onto highway 42 she saw the truck approaching from the right at a distance of about a half a block. The sounding of the horn therefore could have served no useful purpose. Under either view of the case, the omission of which complaint is made was not error.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.