## York v. Cumberland Const. Co.

May 9, 1950.

R. C. Tartar, Judge.

798

Ben D. Smith, V. O. Blackburn and James A. Hicks for appellant.

J. G. Smith and Parker W. Duncan for appellee.

JUDGE HELM—Reversing.

Appellant M. D. York brought this action to recover damages to his truck in a collision with a rock spreader, or "spreader box," owned and being used by appellee in the resurfacing of a part of Highway 35 in Clinton County. At the close of all the evidence the trial court directed a verdict for appellee, because "under the evidence * * * the plaintiff's driver was guilty of contributory negligence as a matter of law." Appellant appeals, assigning as errors: (1) The court erred in overruling appellant's demurrer to the second paragraph of appellee's amended answer; and (2) the court erred in sustaining appellee's motion for a peremptory instruction.

About one a. m., May 22, 1946, Raymond York, 18, son of appellant, was driving his father's 1939 Chevrolet pickup truck north from Albany on Highway 35. He was on his right side of the road, traveling about 35 miles an hour. He had "good lights " on his truck; he could see ahead about 50 yards. About three and a half miles out of Albany he "hit" appellee's spreader. As to how the accident occurred, he says, "I was driving down the road, didn't see any lights or anything. I saw the spreader a few steps before I got to it. I tried to cut around it but I was too close and I couldn't do it." The front end of his truck missed the spreader; the right side of his truck struck it; the impact caused his truck to turn over; the spreader was metal and heavy; it was a dark night; there were no "smudge pots" or flares burning to warn him of the location of the spreader; the road he was traveling was dusty; the spreader box was a "dingy color."

Raymond, who was working in Indiana, was on a

visit to his father's home, eight miles north of Albany on Highway 35. A portion of Highway 35, a gravel road, including the part referred to in this action, was being resurfaced by appellant under a contract with the Highway Department. On the day before the collision he had driven over this road with his father, coming to Albany and again returning to his father's home. He drove over it a third time going back to Albany. He and his father saw that appellant was spreading large stone on the road with a rock spreader as it was being resurfaced, and saw appellant's machinery used in this work.

Other witnesses for appellant say that they had traveled this road that night before the collision occurred; that appellee did not have any flares, smudge pots, or other warning signs at the spreader. Raymond and other witnesses say that the spreader had been moved about one-half mile south along the road that day; that it was about three feet high and occupied about one-half of the road. Raymond says that he did not know about any signs on the road north of the place of collision where appellee began this work, or at the junction of Highway 35 with Highway 90, where the work would end; that he had not noticed any signs saying that the road was under construction and warning the public to travel at its own risk.

For appellee it is shown that the spreader had not been used the day preceding the collision; that signs four by six feet with the words "Road Under Construction, Proceed At Your Own Risk" and the name of the contractor had been placed at each end of the construction work; that flares had been placed about six or eight feet from each sign on May 21, 1946, and that the flares were burning near the signs the following morning; that a lighted flare, or smudge pot, was placed on the spreader box at closing time on May 21 and that lighted flares were placed on the highway, one on each side of the spreader; that the wind does not have much effect on the flares. The flares were burning the next morning, except the one on the spreader box struck by appellant's truck; that flare was turned "upside down"; the spreader box was nine feet wide at the bottom. Appellee had two spreader boxes on the road, about 150 yards apart.

Road contractors customarily leave spreader

boxes "setting on the highway * * * to keep traffic off the loose stone." The spreader box "as a rule is up in front, the stone behind," and it is the custom to put warning signs at each end of the construction work and to put out flares at the equipment along the road. Appellee put out proper flares each night to warn the traveling public of the location of their spreader boxes. The flares or smudge pots used were acceptable, and the kind customarily used by road contractors.

In Barnes v. F. C. Gorrell & Sons, 296 Ky. 583, 177 S. W. 2d 395, 397, we said: "Whilst proof of defendants' conforming to the practice of others in performing the same act is admissible in evidence, it is not conclusive of the question of negligence." The question here is not what was the custom, but were the flares placed and burning at the spreader at the time of the accident complained of?

It appears from the above summary of the testimony that the evidence was conflicting. We are unable to say that appellant was guilty of contributory negligence as a matter of law. The case should have been submitted to the jury under proper instructions.

Appellant, in his petition, claims $375 for damage to his truck, $60 for damage to merchandise, (he was the Watkins' dealer in Clinton County), and $370 for loss of the use of the truck. Appellee, in the second paragraph of its answer, pleads that appellant had an insurance policy, insuring appellant against damages to his truck by reason of collision with other objects on the highway; that the name of the insurance company is not known to appellee, but is known to appellant; that following the accident the insurance company paid to appellant "the amount of damages sustained by him by reason of the injury to his truck"; that appellant executed to the insurance company an assignment or subrogation agreement; that the "insurance company is the real party of interest * * * in the subject of this action." The court overruled appellant's demurrer to this plea, and required him to disclose the name of the insurance company. Appellant, by reply, denied the allegations of appellee's answer, and then, in response to the order of the court, disclosed the name of the insurance company, and that he had collision coverage. From the briefs it appears that "pursuant to the terms of the

policy, the company paid to York the sum of $262.75, representing 80% of the actual damage to the truck." That is, the insurer paid appellant less than the damage to his truck, and appellee, the alleged tort-feasor, has not paid appellant anything.

In Barr v. Searcy, 280 Ky. 535, 133 S. W. 2d 714, 716, citing with approval the case of Illinois Central Railroad Company v. Hicklin, 131 Ky. 624, 115 S. W. 752, 23 L. R. A., N. S. 870, we said: "In the Hicklin case the plaintiffs owned a house which was destroyed by fire. They brought an action against the Illinois Central Railroad Company to recover damages in the sum of $1,100 alleging that the house had been destroyed by the negligence of the railroad company in permitting sparks to escape from its engine and alight thereon. In the second paragraph of its answer the defendant alleged that the plaintiffs' house was insured for the sum of $700, which was its full value, and they had collected from the insurers $700 on account of the fire, which fully repaid them for any loss they sustained by reason of the fire, and it further alleged that if there was any liability the insurance company alone was entitled to recover. A demurrer to this paragraph of the answer was sustained, and, in affirming the judgment, this court said: "It may be that, as between plaintiffs and the insurance company, the latter would be equitably entitled to the damages that the plaintiffs recovered. The fact, however, that a third party might be entitled to the damages as between him and plaintiffs, is not sufficient to bar the right of action by the plantiffs. The legal title to the property destroyed was in the plaintiffs. As between the plaintiffs and the defendant the former were the real parties in interest. It is immaterial to the railroad company what may be the equities between the plaintiffs and the insurance company. All that it can demand is that a judgment in favor of the plaintiffs will be a complete defense to any further action for the same cause. In our opinion the judgment in favor of plaintiffs is conclusive, and no action can now be maintained against the railroad company by the insurance company. Any right of action the insurance company may have is against the plaintiffs." The Hicklin and Searcy cases are controlling here. See 96 A. L. R. 875-876.

In this action of appellant (the insured), against ap-

pellee (the alleged tort-feasor) the insurance company is not a necessary party, or the real party in interest.

On another trial no testimony as to the insurance company, or its coverage of appellant, should be introduced. Appellant's demurrer should have been sustained. The judgment is reversed for proceedings not inconsistent with this opinion.