Lewis F. KRAHWINKEL, Jr.,
Appellant/Cross–Appellee,

v.

COMMONWEALTH ALUMINUM
CORPORATION, Appellee/Cross–
Appellant.

No. 2003–SC–0708–DG,
2004–SC–0219–DG.

Supreme Court of Kentucky.

Aug. 25, 2005.

As Modified on Denial of Rehearing
Feb. 23, 2006.

Jeanie Owen Miller, Owensboro, Counsel for Appellant/Cross–Appellee.

Marvin P. Nunley, McCarroll, Nunley & Hartz, Owensboro, Counsel for Appellee/Cross–Appellant.

COOPER, Justice.

Appellee, Commonwealth Aluminum Corporation ("Commonwealth") contracted with Intech–Industrial Technology, Inc. ("Intech") for the purchase and installation

of a new fluid capture system in its industrial plant. The contract required Intech to install a large tank in the basement of the plant into which groundwater containing PCBs would be pumped for containment and disposal. On January 24, 1996, the tank was unloaded from an Intech truck and moved by a permanently installed overhead crane across the motor room of Commonwealth's plant to a room containing a large hole in the floor through which the tank was lowered to the basement. The grate that normally covered the hole was removed for this purpose. Appellant, Lewis F. Krahwinkel, Jr., an employee of Intech, was assigned the task of guiding the tank through the motor room using a lead line. He testified that a large amount of oil and grease, as much as an inch thick, was on the portion of the motor room floor on which he was required to walk in order to guide the tank, and that the oil and grease adhered to his boots. After the tank was lowered into the hole, Appellant remained on the ground floor passing tools to other Intech employees in the basement. While so engaged, he slipped and fell through the hole approximately sixteen feet to the basement floor, seriously injuring his right knee and ankle. He later opined that the oil and grease that adhered to his boots while he was guiding the tank through the motor room caused his feet to slip out from under him. Gene Holtzman, Commonwealth's safety administrator, admitted at trial that there was oil and grease on the floor in the area around the hole.

Appellant filed a workers' compensation claim against Intech. He also brought this civil action in the Hancock Circuit Court against Commonwealth, alleging that his fall was caused by negligent acts or omissions of Commonwealth. Intech intervened in the civil action to assert its statutory subrogation claim, KRS 342.700(1), but voluntarily dismissed its intervening complaint prior to trial.

According to an Agreement as to Compensation dated February 5, 2001, Appellant successfully prosecuted his workers' compensation claim against Intech to an "opinion and award dated February 27, 1998." He received $18,240.57 in temporary total disability benefits (TTD)[1] (57 weeks[2] × $320.01 per week) and additional weekly benefits for a 50% permanent partial disability (PPD).[3] Pursuant to KRS 342.020, Intech's insurer, Underwriters Safety & Claims, also paid medical bills of $15,292.15 incurred by Appellant up to the date of the agreement. The remainder of Appellant's workers' compensation claim was settled for a lump sum of $39,956.68, itemized as follows:

$30,456.68 — lump sum payment of 50% PPD award
4,500.00 — buyout of future medical expenses
4,000.00 — waiver of right to reopen
1,000.00 — waiver of vocational rehabilitation

$39,956.68

At the trial of Appellant's civil action against Commonwealth, Appellant introduced evidence that there were no protective guardrails ("fall prevention") around the hole and no place to tie off a safety harness ("fall restraint") normally worn while working in the vicinity of an open floor hole. Appellant asserted that Commonwealth's violation of occupational safety and health regulations requiring these protections constituted negligence per se and that the jury should be instructed only to determine the degree of Appellant's

1. KRS 342.730(1)(a).

2. January 25—March 21, 1996 (8 weeks); January 3—August 31, 1997 (34²⁄₇ths weeks); July 20—October 31, 2000 (14 ⁵⁄₇ths weeks).

3. KRS 342.730(1)(b).

fault, if any, and render an apportioned verdict pursuant to KRS 411.182. Instead, the trial court instructed the jury that Commonwealth had a duty to exercise ordinary care to maintain its business premises in a reasonably safe condition. The jury returned a verdict finding both parties at fault and fixing Appellant's damages at $44,971.02, itemized as follows:

$10,000.00 — permanent impairment of power to earn money
 7,300.00 — past and future pain and suffering
17,671.02 — medical expenses incurred  ·
10,000.00 — lost wages

$44,971.02

Because the jury also apportioned fault at 75% against Commonwealth and 25% against Appellant, the trial court reduced the judgment to a lump sum of $33,728.27 ($44,971.02 × 0.75). Applying the apportionment to each separate item of damages yields the following itemization:

$ 7,500.00 — permanent impairment
 5,475.00 — pain and suffering
13,253.27 — medical expenses
 7,500.00 — lost wages

$33,728.27

On appeal to the Court of Appeals, Commonwealth asserted that (1) the trial court should have sustained its motion for a directed verdict because (a) the presence of the hole was open and obvious, and (b) pursuant to its contract with Intech, the latter assumed responsibility for the safety of its own employees; or, in the alternative, (2) the trial court should have vacated those portions of the judgment that duplicated amounts paid to Appellant or his medical providers pursuant to his workers' compensation claim so as to prevent double recovery. The Court of Appeals held that (1) Appellant's testimony that his fall was caused by the oil and grease that adhered to his boots while he was guiding the tank through the motor room created a

jury issue with respect to Commonwealth's negligence and causation, rendering it unnecessary to address whether Intech had contractually assumed · responsibility to provide guardrails or safety harnesses for its employees;[4] but (2) an owner is not liable for injuries to third parties arising out of work performed by an independent contractor unless the work constitutes a nuisance or is inherently dangerous, and that the work performed by Intech fell into neither of those categories; and (3) even if the work was inherently dangerous, the liability of an owner to employees of an independent contractor is limited to payment of workers' compensation benefits. See KRS 342.700(2). Since Appellant had already recovered workers' compensation benefits from Intech, he had no claim against Commonwealth. Having thus disposed of the case, the Court of Appeals did not reach the issue of double recovery.

Appellant moved for discretionary review and Commonwealth filed a cross motion for review solely to preserve the issue of double recovery. *Commonwealth, Transp. Cabinet v. Taub*, 766 S.W.2d 49, 51–52 (Ky.1988). Since issues pertaining to Commonwealth's negligence and causation were not preserved for further review, Appellant's argument that Commonwealth's alleged violation of administrative regulations adopted pursuant to the Kentucky Occupational Safety and Health Act, KRS 338, constituted negligence per se are moot. We now reverse the Court of Appeals insofar as it vacated Appellant's judgment in its entirety, and remand this case to the Hancock Circuit Court with directions to determine an appropriate computation of the total credit due to Commonwealth in light of the employer's/insurer's failure to assert its right of

---

4. Commonwealth did not file a third-party complaint against Intech for contribution. *Compare AIK Selective Self Ins. Fund v. Bush,* 74 S.W.3d 251, 252 (Ky.2002); *Dix & Assocs. Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24, 29 (Ky.1990).

subrogation and enter an amended judgment in accordance with that computation.

## I. LIABILITY OF OWNER FOR INJURIES TO EMPLOYEES OF INDEPENDENT CONTRACTOR.

The Court of Appeals' reliance on *Simmons v. Clark Constr. Co.*, 426 S.W.2d 930 (Ky.1968), *Jennings v. Vincent's Adm'x*, 284 Ky. 614, 145 S.W.2d 537 (1940), and *Clemons v. Browning*, 715 S.W.2d 245 (Ky. App.1986), for its holding that Commonwealth is not liable for Appellant's damages because the work performed by Intech was neither a nuisance nor inherently dangerous was misplaced. Those cases apply only when it is sought to hold an owner *vicariously* liable for the negligence of an independent contractor. *Jennings*, 145 S.W.2d at 541. In both *Simmons* and *Clemons*, employees of subcontractors were injured because of defective scaffolding erected not by the owner but by the independent general contractor. *Simmons*, 426 S.W.2d at 931; *Clemons*, 715 S.W.2d at 246. The fatal explosion in *Jennings* was caused by the negligence of employees of the independent contractor, not the owner. *Jennings*, 145 S.W.2d at 539. Here, Commonwealth was not held vicariously liable because of the negligence of Intech's employees. It was held directly liable because of its own negligence.

▪ In holding that the liability of the owner to the employees of an independent contractor is limited to payment of workers' compensation benefits, the Court of Appeals relied on language in *King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659 (Ky.1973), which, if taken out of context, would seem to support that position, *viz*:

> We can see no reason why appellant, simply because he was an employee of an independent contractor, should be placed in a better position than if he had been an employee of Shelby [owner], in which case his recovery would be limited without question to the benefits provided by the Workmen's Compensation Act. Conversely, we see no valid reason why Shelby should be subjected to more liability simply because it engaged the services of a qualified independent contractor.

*Id.* at 663. However, *King*, like *Simmons*, *Jennings*, and *Clemons*, was a case in which an employee of an independent contractor sought to hold the owner vicariously liable for injuries caused by the contractor's negligence:

> The evidence in the case on behalf of Shelby indicated that it did not exercise any control whatever over the work involved and did not consider itself to have the right of [sic] the duty to do so.
>
> . . .
>
> [T]he liability of Shelby for the negligence of the independent contractor does not extend to the employees of the independent contractor.

*King*, 502 S.W.2d at 664. As subsequently explained in *Caskey v. Hammonds Construction, Inc.*, 536 S.W.2d 449 (Ky.1976), "[t]he opinion [in *King* ] does not hold that an employee of an independent contractor may not recover from the owner in those instances where the negligence of the owner causes the injury or death of the employee of the independent contractor." *Id.* at 451. *Caskey* held that an owner is liable for injuries sustained by an employee of its independent contractor that were caused by the owner's own negligence. *Id.*

▪ Workers' compensation coverage is a voluntary contract between employer and employee, the terms of which are defined by the provisions of the Act. *McNeese Const. Co. v. Harris*, 273 S.W.2d 355, 357 (Ky.1954). The employer gives up the right to claim certain defenses,

KRS 342.610(1), in exchange for the employee's agreement to accept limited benefits in lieu of damages at law, KRS 342.690(1). It is the voluntary nature of this statutory contract that renders the Act constitutional. *See generally Greene v. Caldwell*, 170 Ky. 571, 186 S.W. 648 (1916) (upholding constitutionality of 1916 Kentucky Workmen's Compensation Act and distinguishing *State Journal Co. v. Workmen's Comp. Bd.*, 161 Ky. 562, 170 S.W. 1166 (1914), which had held the mandatory 1914 Act unconstitutional). The Court of Appeals' interpretation of the quoted language in *King* would give an independently negligent nonparty to this statutory contract the same advantages otherwise afforded only to the injured party's employer.[5] The trial court properly held Commonwealth liable for damages incurred by Appellant because of Commonwealth's own negligence.

## II. DOUBLE RECOVERY.

▆ KRS 342.700(1) provides:

Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, *but he shall not collect from both.* If the injured employee elects to proceed at law by civil action against the other person to recover damages, he shall give due and timely notice to the employer and the special fund of the filing of the action. If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense. The notice of civil action shall conform in all respects to the requirements of KRS 411.188(2).

(Emphasis added.) The statute separately defines the respective rights of the injured employee and the employer/insurer when the employee's injuries were caused by the negligence of a third party. The employer/insurer "owns" a subrogation right to the amount of compensation it paid to the injured employee, and the employee "owns" the right to any other damages for which the third-party tortfeasor is legally liable. The emphasized language in the statute clearly precludes double recovery by the employee and does not condition that preclusion upon whether the employer actually pursues its subrogation right.[6]

---

5. Commonwealth does not claim that it is an "up-the-ladder" employer of Appellant. KRS 342.690(1); KRS 342.610(2)(b). The installation of the fluid capture system was not a "regular or recurrent" part of Commonwealth's business, trade or occupation. KRS 342.610(2)(b); *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky.1986). *Compare Gesler v. Ford Motor Co.*, 185 F.Supp.2d 724, 728 (W.D.Ky.2001) (demolition and removal of automobile body anti-corrosion system so that new system could be installed in its place was not a regular or recurrent part of automobile manufacturer's business), *with Sharp v. Ford Motor Co.*, 66 F.Supp.2d 867, 869–70 (W.D.Ky.1998) (loading and unloading manufactured vehicles was a regular or recurrent part of automobile manufacturer's business).

6. The employer/insurer might conclude that its subrogation right is not worth pursuing in view of the fact that the statute requires that the employee's legal fees and expenses be

The statute has been a part of our Workers' Compensation Act since its initial enactment in 1916. *See AIK v. Bush,* 74 S.W.3d at 254, for a brief statutory history. Shortly after its enactment, our predecessor Court held that the statute allowed the employee to assert claims against both the employer and the third-party tortfeasor, albeit in different forums, but *"to the extent he collects from one he may not collect from the other." Book v. City of Henderson,* 176 Ky. 785, 197 S.W. 449, 451 (1917) (emphasis added). *See also S. Quarries & Contracting Co. v. Hensley,* 313 Ky. 640, 232 S.W.2d 999, 1002 (1950) ("[I]f the employer, having paid compensation, makes no claim against the negligent third party, the latter is entitled to be credited on the judgment rendered against him in favor of an injured employee for such compensation as may have been paid to such employee by the employer."); *Dillman v. John Diebold & Sons Stone Co.,* 241 Ky. 631, 44 S.W.2d 581, 583 (1931) ("Dillman, the employee of the principal contractor, may maintain his action for damages against appellee, the subcontractor, notwithstanding the fact that he had been paid compensation by the insurer of his immediate employer, subject, however, to appellee's right in the event of a recovery to have the judgment credited by the compensation so paid."); *Napier v. John P. Gorman Coal Co.,* 242 Ky. 127, 45 S.W.2d 1064, 1065 (1931) ("The amount of compensation received by the injured employee, or, in the event of fatal injury, by the dependents, must be credited upon the amount recovered from the wrongdoer, and only the excess of the damages over the compensation collected is recoverable."); *Berry v. Irwin,* 224 Ky. 565, 6 S.W.2d 705, 706 (1928) (same quote as *Southern Quarries* ); *Williams v. Brown,*

205 Ky. 74, 265 S.W. 480, 481 (1924) ("The one thing certain from a reading of the section of the statute above quoted is that the injured employee cannot have full compensation and collect money on a judgment for full damages for the same injury. That would be double compensation.").

In *Davis v. Buley,* 634 S.W.2d 161 (Ky. App.1982), the Court of Appeals held that "KRS 342.700(1) expresses a clear legislative intent that an injured employee should not be allowed to recover from both the compensation carrier and a third-party tortfeasor." *Id.* at 163. *See also Old Republic Ins. Co. v. Ashley,* 722 S.W.2d 55, 59 (Ky.App.1986) ("The policy behind KRS 342.700(1) that an injured employee should not recover from both the workers' compensation carrier and a third-party tortfeasor has long been recognized by Kentucky courts."); 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 110.02, at 110–3 (Matthew Bender 2004) ("It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common law damage recovery."). That is not to say that the employer/insurer could not assign its subrogation rights to the worker, as was done in *Weinberg v. Crenshaw,* 896 S.W.2d 22 (Ky.App.1995). However, there was no assignment in this case—only a decision by Intech, for whatever reason, to forego its subrogation rights.

In his separate opinion, the Chief Justice would hold that when the employer or carrier entitled to subrogation under KRS 342.700(1) decides not to pursue its subrogation rights, the common law collateral source rule and/or KRS 411.188(2) assigns those rights to the worker as a matter of

---

deducted from the amount recovered by the employer/insurer. *See AIK v. Bush,* 74

S.W.3d at 258.

law. *Post*, at 162–63. However, neither KRS 342.700(1) nor KRS 411.188(2) so provides. Both statutes provide only that the failure of the subrogee to assert its rights results in the loss of those rights. Neither provides that those rights are thereby transferred to the subrogor in order to permit double recovery. In *Zurich Am. Ins. Co. v. Haile*, 882 S.W.2d 681 (Ky. 1994), we specifically rejected such an interpretation of KRS 411.188:

> Had this case not been settled forthwith under terms excluding the amounts paid by Zurich, dismissing Zurich's subrogation claim would have resulted, quite possibly, in a windfall verdict for the plaintiff, the very same double recovery which KRS 342.700(1) was written to prevent. We are not inclined or required to interpret the statute [KRS 411.188] to permit such an absurdity.

*Id.* at 686.

Nor is the common law collateral source rule relevant to this issue.

> But it is suggested that, under the common law, appellee would have been entitled to recover for the combined results of the disease and the accident, and that many compensation acts have been construed as having the same effect. The act supersedes the common law and creates a different standard of rights and obligations covering the entire field of personal injury as defined in the act. It provides for compensation and not for damages, and common-law principles fixing the measure of damages for injuries caused by negligence are no longer applicable or controlling.

*Robinson–Pettet Co. v. Workmen's Comp. Bd.*, 201 Ky. 719, 258 S.W. 318, 319–20 (1924). *See also Evansville Printing Corp. v. Sugg*, 817 S.W.2d 455, 457 (Ky. App.1991) (Workers' Compensation Act evidences legislative policy and supersedes common law).

In denying double recovery to the worker, KRS 342.700(1) operates similarly as KRS 304.39–060(2)(a), which abolishes tort recovery by a person injured in an automobile accident who has not rejected the provisions of the Motor Vehicle Reparations Act for amounts paid or payable in reparations benefits.

> The effect of this statute is to abolish the claims for lost wages and medical expenses of a person injured in an automobile accident against the person who caused the injury to the extent that basic reparations are payable therefor. The injured person can assert a claim only for those damages which exceeded the amounts payable as basic reparation benefits. *If it elects to do so, the basic reparations obligor may intervene as the real party in interest to recover the sums payable by it as reparation benefits.*

*Carta v. Dale*, 718 S.W.2d 126, 128 (Ky. 1986) (emphasis added) (internal citations omitted). *See also Ohio Cas. Ins. Co. v. Ruschell*, 834 S.W.2d 166, 168 (Ky.1992) (claimant has no tort claim whatsoever for those elements of damages paid or payable under the no-fault statute).

Any windfall obtained by Commonwealth from Intech's decision to forego its subrogation rights is no different than if Intech had never filed its intervening complaint in this action. Either way, KRS 342.700(1) precludes Appellant from recovering from Commonwealth those elements of damages that he had already recovered from Intech by way of workers' compensation benefits.

Accordingly, we reverse the Court of Appeals insofar as it vacates the entire judgment against Commonwealth, but we remand this cause to the circuit court for an appropriate computation of the total credit due to Commonwealth in light of the

employer's/insurer's failure to assert its right of subrogation and to enter an amended judgment in accordance with that computation. Upon remand, the parties may be heard and evidence taken, if necessary, as to the proper determination of the aforementioned credit.

GRAVES, J., concurs.

LAMBERT, C.J., concurs in part and dissents in part by separate opinion, with SCOTT, and WINTERSHEIMER, JJ., joining that dissenting opinion.

COOPER, J., concurs in part and dissents in part by separate opinion, with JOHNSTONE, and ROACH, JJ., joining that opinion.

SCOTT, J., concurs in part and dissents in part by separate opinion, with LAMBERT, C.J., and WINTERSHEIMER, J., joining that opinion.

LAMBERT, J., concurring in part and dissenting in Part.

I agree with the majority's analysis and conclusion that the jury verdict must be reinstated. However, this same analysis compels a result in opposition to the one the majority has reached on the issue of double recovery.

The following excerpt from the majority opinion explains why Commonwealth may not invoke provisions of the Workers' Compensation Act to receive a windfall:

Workers' compensation coverage is a voluntary contract between employer and employee, the terms of which are defined by the provisions of the Act. The employer gives up the right to claim certain defenses, in exchange for the employee's agreement to accept limited benefits in lieu of damages at law. It is the voluntary nature of this statutory contract that renders the Act constitutional.

Despite the foregoing accurate statement of the law, the majority perplexingly proceeds to rely on one of the Act's provisions to protect a party not covered by the Act, the tortfeasor, Commonwealth. As a result of this faulty application of the Act, the majority reduces the jury's damages award and gives the negligent nonparty the same advantage that the Act affords, solely, to the injured party's employer.

There is no question that the relationship between the employer (Intech) and the employee (Krahwinkel) is governed by the Workers' Compensation Act. As the majority recognizes, it is the voluntary nature of the contract that renders the Workers' Compensation Act constitutional. The limitation on the employee's recovery can only be invoked by the employer or another entity whose liability arises by virtue of the contract for workers' compensation coverage.

Krahwinkel and Intech were the parties to the contract giving rise to the Act's application; thus, their relationship is governed by the Act's provisions. Accordingly, if Intech had chosen to remain a party in the litigation, the Workers' Compensation Act would have governed the right of recovery between Krahwinkel and Intech via the third party tortfeasor, Commonwealth. However, absent any dispute as to rights or remedies between Krahwinkel and Intech, no contract giving rise to the Act's application is implicated. Once this court determined that Commonwealth's status was that of an independent tortfeasor, rather than an employer, the Workers' Compensation Act became irrelevant to Krahwinkel's common law claim against Commonwealth.

Essentially, the majority is allowing Commonwealth to enforce a workers' compensation agreement against Krahwinkel,

even though it is not a party or beneficiary of that agreement. Under Kentucky law, before a third person who is not a party to a contract can derive benefit from that contract, the third person must show that the contract was made and entered into directly or primarily for the benefit of the third person.[1] An employer and employee who choose to enter into a workers' compensation coverage agreement do so for their own benefit, not for the benefit of a negligent third party. There is no suggestion that Commonwealth was intended to be a third-party beneficiary of the workers' compensation contract. A person who is neither a party nor a third-party beneficiary of a contract, may not enforce it.[2] Accordingly, Commonwealth may not invoke provisions of the Workers' Compensation Act or benefit from it in the instant case.

The common law, rather than the Workers' Compensation Act, governs Krahwinkel's claim against Commonwealth. The common law rule, known as the collateral source rule, states "that it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives."[3] Long followed in Kentucky,[4] the collateral source rule allows an injured plaintiff to seek sufficient damages to make him whole without regard to payments made to the injured party by someone other than the tortfeasor.[5]

Moreover, even if, as the majority contends, KRS 342.700(1) is controlling, the same result obtains from an in-depth analysis of the entirety of the statute. The majority has failed to read the statute as a whole and focuses instead on the first sentence to the exclusion of the remainder. The outcome of the majority decision is to grant a windfall to the wrong party, i.e., the tortfeasor who inflicted the harm instead of the injured worker. As a matter of policy, wrongful conduct should not be rewarded.

The statute at issue, KRS 342.700(1) is an inartful attempt to codify the well-settled common-law principle that a tortfeasor should not be relieved of a duty to compensate for harm inflicted because the injured party has already received payment from another source. What the statute attempts to do is provide that a covered workers' compensation employee injured by the negligence of a third party have a workers compensation claim and a common law civil action against the negligent third party. It mandates that the employer or its insurance carrier be given notice of the third party claim and authorized to intervene for the purpose of asserting its subrogation right. That procedure was followed here. However, during the litigation, for reasons that are unknown, the employer decided to forgo its subrogation right, thus giving up its right to obtain reimbursement from the negligent third party. Astonishingly, the majority concludes that this election to forego inures to the benefit of the sole wrongdoer and not to the injured worker. I see it differently.

By a reasonable interpretation of the entirety of the statute, KRS 342.700(1) protects the Workers' Compensation carri-

---

1. *Long v. Reiss,* 290 Ky. 198, 160 S.W.2d 668 (1942)

2. *Sexton v. Taylor County,* 692 S.W.2d 808 (Ky.App.1985).

3. Rest.2d Torts s. 920 (1979).

4. *Louisville & Nashville RR Co. v. Corothers,* 65 S.W. 833, 834 (Ky.1901); *Barr. v. Searcy,* 280 Ky. 535, 133 S.W.2d 714, 715 (1939).

5. *See Baptist Healthcare Sys. v. Miller,* 177 S.W.3d 676 (Ky 2005); *Schwartz v. Hasty,* 175 S.W.3d 621 (Ky.2005).

er's subrogation rights, but in the event the carrier does not pursue its subrogation rights, the statute grants no protection to the tortfeasor. I recognize that the statute says the plaintiff cannot recover twice for the same injury, but it does so as a means to protect the subrogation rights of the carrier. The statute was not intended to apply in a similarly restrictive way when the carrier does not assert its rights because the purpose for which the statute was enacted—to protect the carrier's right to reimbursement—is no longer present. In that event the statute allows the injured worker to recover fully from the tortfeasor even though he has received collateral payment. This is so because the tortfeasor is required to pay for the consequences of its wrongful conduct.

The statute itself allows the injured worker to receive payment from the tortfeasor for two reasons. First, the third sentence of KRS 342.700(1) uses permissive language, stating that the carrier "may recover," but it does not disclose what happens in the event that the carrier fails to pursue its right to recover. Second, the final sentence of the statute requires notice in accordance with KRS 411.188(2). KRS 411.188(2) states that a plaintiff must notify all parties it believes to hold subrogation rights, and such notification "shall state that a failure to assert subrogation rights by intervention ... will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action." Thus, as applicable, KRS 342.700 incorporates the provisions of KRS 411.188(2) which answers the question of what shall happen when a party holding subrogation rights fails to assert or pursue those rights. The majority opinion is deeply flawed because it seizes on a single clause in a complex statute that incorporates another statute and fails to give effect to the whole of the statutes except for the clause it prefers. Not only is the conclusion of the majority not required by the statute, it is contrary to proper statutory construction because it fails to give effect to the entire statute.

Finally, KRS 446.080 mandates that courts interpret all statutes liberally to effect the intent of the general assembly.[6] We have consistently recognized this: "The general assembly has directed that all statutes be construed in a manner that furthers the objectives for which the statute was enacted."[7] Clearly KRS 342.700(1) is for the benefit of employers or their workers compensation carriers to permit them to recover sums the law requires them to pay as a result of the fault of a third party. Its purpose is to make whole the workers' compensation carrier by reimbursing it and imposing the actual cost on the actual tortfeasor for the tortfeasor's share of the workers' compensation benefit paid. The entire premise of the Workers Compensation Act is to protect employees by ensuring immediate payment for injuries sustained while in the course and scope of employment. Though its purpose is to guarantee payment without considerations of the fault of the employer, it does not circumscribe an injured worker's legitimate tort claim against a third-party tortfeasor.

Here the majority reaches an unreasonable result by turning the statute on its head and allows the wrongdoer a windfall. No statute should be construed to reach an

---

6. KRS 446.080(1); *Bryant v. Jericol Mining, Inc.*, 758 S.W.2d 45 (Ky.App.1988).

7. *Commonwealth v. Pendennis Club, Inc.*, 153 S.W.3d 784, 787 (Ky.2004); *Phil Hollenbach Co. v. Hollenbach*, 181 Ky. 262, 204 S.W. 152

(1918) ("The spirit of the law, and not the letter, should control its construction, and the object to be accomplished should be considered.").

absurd conclusion. Statutes should be given a practical construction to carry out their manifest purposes.[8]

The proper result in this case would be for the injured party and not the party who inflicted the injury to receive the benefit. Accordingly, I would reinstate the jury verdict entirely.

SCOTT and WINTERSHEIMER, JJ., join this dissenting opinion.

COOPER, Justice, concurring in Part and dissenting in Part.

I concur with the modified majority opinion except insofar as it remands the case to the Hancock Circuit Court with directions to compute the amounts that must be deducted from the judgment in order to preclude a double recovery by Appellant. The modified majority opinion cites no authority for this unnecessary procedure. Appellant, in his Petition for Rehearing, cited only *Whittaker v. Hardin*, 32 S.W.3d 497 (Ky.2000), and *Mastin v. Liberal Markets*, 674 S.W.2d 7 (Ky.1984), both of which hold that the plaintiff is entitled to have a trier of fact *allocate* elements of damages that should be credited. *Whittaker*, 32 S.W.3d at 498; *Mastin*, 674 S.W.2d at 14.

*Whittaker* was an appeal from a workers' compensation case in which the employer/insurer sought credit for amounts received by the claimant in settlement of a civil action against the third-party tortfeasor. The claimant had received a lump sum settlement with no allocation to specific categories of damages. *Whittaker*, 32 S.W.3d at 498. Thus, no independent factfinder had ever determined how much of

the lump sum tort settlement corresponded with the amounts and categories of benefits awarded in the workers' compensation claim. *Whittaker* held that an Administrative Law Judge had jurisdiction to make those findings under KRS 342.325. *Id.* at 499. *Mastin* was an appeal from a circuit court order denying enforcement of a workers' compensation award. *Mastin*, 674 S.W.2d at 8–9. *See* KRS 342.305. The claimant had settled her tort action against one of the third-party tortfeasors pursuant to a settlement agreement that allocated damages by categories, but allocated most of the damages to pain and suffering, *Mastin*, 674 S.W.2d at 9, a category for which there is no corresponding workers' compensation recovery.

The preclusion against double recovery applies only insofar as a category of damages recovered in the tort settlement duplicates a category of benefits awarded in the workers' compensation award or settlement. *Id.* at 12–14; *Hillman v. Am. Mut. Liab. Ins. Co.*, 631 S.W.2d 848, 850 (Ky. 1982). In *Mastin*, the employer was not a party to the tort settlement, thus had not concurred in the allocation of damages. *Mastin* held that the employer was entitled to have an independent factfinder hear evidence and allocate the damages in order to determine the amount creditable against the workers' compensation award. *Mastin*, 674 S.W.2d at 14. *Mastin* also agreed with the claimant's argument that the tort settlement might represent less than her actual damages as determined by an independent factfinder,[1] and that if the factfinder found that the settlement represented less than her actual damages, the

---

8. *Reeves v. Fidelity & Columbia Trust Co.*, 293 Ky. 544, 169 S.W.2d 621 (Ky.1942); *see also Bird v. Bd. Of Comm'rs of Kenton County*, 95 Ky. 195, 24 S.W. 118 (1893) (Particular words found in a statute, which, if literally followed, lead to an absurdity or defeat the manifest intent of the legislature as gathered from the

entire act, may be disregarded in its interpretation).

1. Such often occurs when the plaintiff settles for the tortfeasor's liability insurance policy limits which are less than the plaintiff's actual damages.

employer/insurer was entitled to a credit only against its proportional share of the total damages. *Id.* at 13. *Mastin* remanded the case to the circuit court to hear evidence, make appropriate findings of fact, and apply those facts to the legal principles set forth in the opinion. *Id.* at 15.[2]

Here, except for one item in the settlement that might allow Commonwealth an additional credit (see note 3, *infra* ), we already know exactly how much Appellant was paid in workers' compensation benefits and the categories of those payments. We also know exactly how much Appellant was awarded in his judgment against Commonwealth and the categories of those damages. Whether a category of workers' compensation benefits corresponds to a category of damages awarded in a judgment is a question of law, not fact; thus, a remand to the circuit court for additional findings of fact is unnecessary in this case. In the interest of judicial economy, we can and should determine now what categories of workers' compensation benefits received should be credited against the judgment and perform the simple task of subtraction ourselves, thus avoiding yet another round of expensive and time-consuming appeals. That is precisely what we did in *AIK Selective Self Insurance Fund v. Bush,* 74 S.W.3d 251 (Ky.2002), with respect to amounts that were known to have been received and paid. *Id.* at 258. We only remanded to the circuit court the task of allocating credits with respect to amounts that were unknown or might not have been paid—thus required the production of additional evidence. *Id.* Here, both the categories of damages in the tort judgment and the categories of benefits awarded by the workers' compensation board have already been determined by an independent factfinder—the jury with respect to the judgment and the ALJ with respect to the workers' compensation award. There are no unknown amounts or categories requiring additional findings of fact, thus no reason for a remand.

The amounts to be credited against the judgment are, of course, subject to the 75% limit required by the jury's comparative fault finding. *AIK v. Bush,* 74 S.W.3d at 253–55; *U.S. Fid. & Guar. Co. v. Fox,* 872 S.W.2d 91, 93–94 (Ky.App.1993). Applying the principles set forth in those cases and in *Mastin* and *Hillman,* the entire judgment for permanent impairment ($7,500.00) must be vacated because it is duplicated in its entirety by 75% of the workers' compensation payments for permanent partial disability benefits ($30,456.68 X 0.75 = $22,842.51); and the entire judgment for lost wages ($7,500.00) must be vacated because it is duplicated in its entirety by 75% of the workers' compensation payments for temporary total disability benefits ($18,240.57 X 0.75 = $13,680.43). *Hillman,* 631 S.W.2d at 850; *Fox,* 872 S.W.2d at 93–94. The entire judgment for medical expenses ($13,253.27) must be reduced by 75% of the workers' compensation payments paid for medical expenses ($15,292.15 X 0.75 = $11,469.11), leaving a judgment for medical expenses in the amount of $1,784.16.[3] *AIK,* 74 S.W.3d at 258. There can be no reduction of the $7,300.00 judgment for pain and suffering because that item of

---

**2.** One of those legal principles was that the employer/insurer was not entitled to credit for the workers' compensation attorney fee that it commuted from the "back end" of the award and paid to the claimant's attorney pursuant to KRS 342.320(2). *Mastin,* 674 S.W.2d at 12. Since the employer/insurer in this case could not have recovered the attorney fee, if any, paid to Appellant's workers' compensation attorney, any such payment would play no role in determining credits in this case.

**3.** The record does not reflect whether the remaining $1,784.16 in medical expenses were included in the $4,500.00 buyout of fu-

damages is not covered by workers' compensation. *Hillman*, 631 S.W.2d at 850. Nor can there be any reduction of the judgment because of the additional sums paid to Appellant for waivers of future medical expenses, the right to reopen, and vocational rehabilitation, since none of those items were included in the judgment.

Accordingly, I would not remand this case to the Hancock Circuit Court but would simply vacate those portions of the judgment that duplicate workers' compensation payments received, leaving a total judgment of $9,084.16, plus costs and interest.

JOHNSTONE, and ROACH, JJ., join this opinion.

SCOTT, Justice, concurring in part and dissenting in part.

I concur with the majority on the issue of liability, and with the modifications to the Opinion to the extent it recognizes the trial court's right to make the initial "credit decision." I disagree and dissent however, on the Appellees' right to *any offset* of the Workers' Compensation settlement amounts. I also join Chief Justice Lamberts' dissent.

In dissenting, I would ask how would an assignment of an employer/insurer's "subrogation rights" to the Appellant make any difference in this instance (as suggested), since the logic of the majority opinion gives pre-eminence to the language of KRS 342.700(1), which states "[b]ut, he shall not collect from both," and then allows the defendant/obligor to "offset" the items subject to subrogation—since they weren't claimed by the subrogor (pursuant to the compensation settlement). This log-

ic totally ignores the very next part of KRS 342.700(1), which gives *the right to prevent any "double recovery"* to the specific entities named therein who "[p]aid the compensation, or having become liable therefore, may recover it." Under no stretch of the imagination is the Appellee one of the named entities. Moreover, there was a settlement agreement in this case, between the Appellant and the employer (through its compensation carrier), which clearly envisioned that the Appellant would get the benefits of the subrogation items, even though no specific written assignment was prepared or executed.

The civil courts and administrative tribunals of this Commonwealth depend on "settlements" as much to manage and alleviate their dockets as do our criminal courts on "plea bargains." Undue interference with these mechanisms depletes our resources and ultimately redounds to the detriment of our citizens. The settlement between the Appellant and the employer/insurer met the settlement goals set by each and was acceptable to the Board; that is until this "stumbling block."

As pointed out by Appellant's counsel at oral arguments—had the majority opinion been law at the time—there would have been no settlement to start with! This is the wrong way to go to get to the right place.

I just dissent.

LAMBERT, C.J., and WINTERSHEIMER, J. joins this opinion.

ture medical expenses. (Plaintiff's exhibit no. 1, which apparently contained an itemization of medical expenses, is not in the record on appeal. This is the only possible issue that might be resolved on remand. However, if Commonwealth believed it was entitled to a

credit for this item, it could have supplemented the record on appeal with that information. It chose not to do so. By remanding this case, the modified majority opinion gives Commonwealth a second bite at the apple on this issue.)